UNITED STATES, Appellee

v

DONALD F. HUFF, Sergeant, U. S. Army, Appellant

11 USCMA 397, 29 CMR 213

No. 13,413

Decided April 22, 1960

*Lieutenant Colonel Ralph Herrod* argued the cause for Appellant, Accused.

*First Lieutenant Allen I. Saeks* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. McConaughy.*

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted of desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885, and was sentenced to dishonorable discharge, reduction to the lowest enlisted grade, total forfeitures, and confinement at hard labor for three years. Pursuant to a pretrial agreement, the convening authority reduced the period of confinement to nine months. A board of review affirmed. We granted the accused's petition for review to de-

termine whether he was prejudiced by his counsel's failure to present certain evidence to the court-martial.

The record of trial discloses that upon arraignment the accused entered a plea of guilty to the single offense charged. In the ensuing proceedings, held out of the presence of the court members, the appointed defense counsel presented a pretrial agreement for the law officer's inspection. It indicates that the accused undertook to plead guilty in return for the convening au-

thority's agreement to approve a sentence no more severe than dishonorable discharge, total forfeitures, reduction in grade, and confinement for nine months. In their request for this agreement, the accused and his counsel set forth the following for consideration by the convening authority:

"a. The accused had 4 years honorable service prior to his initial AWOL in 1952. He was enlisted in the Army on 8 September 1948. After completion of basic training at Fort Knox, Kentucky he served in Germany until 1951. In the latter part of June the accused reenlisted for 6 years at Camp Roberts, at which time he went AWOL. The accused was absent from 19 Nov 1952 until he surrendered on 26 June 1953. The accused was tried by general court-martial under Article 85 and found guilty. He was sentenced to be dishonorably discharged from the service and to be confined at hard labor for one year. The convening authority approved only so much of the sentence as found the accused guilty of AWOL in violation of Article 86. Confinement at hard labor was 6 months, forfeiture of $65 per month for 6 months, and suspended the dishonorable discharge for the period of confinement. After being released from confinement the accused was sent to the 25th Replacement Company, 25th Infantry Division (KOKURA) (8025 AU). In 1954 the accused was assigned to the 7th Cavalry Regiment in Hokido, Japan. 17 November 1954 the accused was promoted from PFC to Corporal. The accused attended NCO School starting in March of 1955. He was promoted to Sergeant in 1955. The accused graduated from the NCO School, Fort Benning, Georgia, 29 November 1956, graduating 108 out of 155. Sergeant Huff was a member of the 2d Infantry Battle Group, 4th Infantry, 3d Infantry Division, Fort Benning, Georgia. Prior to his AWOL in November 1957 the accused desired to gyroscope with his company to Germany. He was informed that he did not have enough time remaining on his enlistment to go with the company. In seeking to reenlist he was informed by the battalion commander that he could not reenlist because of his previous conviction of desertion.

"b. In a dejected mood, his hopes for a career in the Army shattered, he left and did not return until apprehended by the civil authorities on 26 May 1959."

Thereafter, the law officer interrogated the accused to satisfy himself of the latter's understanding of the plea and his voluntariness in presenting it. Concluding that the plea was voluntary, he accepted it and so informed the court. Documentary evidence showing an unauthorized absence commencing October 5, 1957, and terminating with the accused's apprehension on May 26, 1959, was then introduced.

After a finding of guilty was returned by the court, the trial counsel read the personal data relating to the accused as shown by the charge sheet. In part, this data shows that with three years and six days of prior service, the accused enlisted in the Regular Army on September 10, 1951, for a period of six years. There was no evidence of previous convictions.

Testifying in mitigation, in response to his counsel's questions, the accused gave his age as 29 years, and declared that the highest rank he had attained was that of Staff Sergeant. While absent, he had engaged in surveying work, and his position would be open for him upon his return to civilian life. The latter assertion was supported by a statement of his employer to that effect. Counsel concluded his efforts on behalf of the accused with an argument in which he sought a light sentence, predicating his request upon the availability of civilian employment and the accused's prior service and "high standing in the military community." Concerning the latter he declared: "He was a non-commissioned officer, an office not to be taken lightly, an office of honor that demands respect."

No mention was made of any of the circumstances set out in the pretrial offer quoted above.

The court's deliberations upon the sentence lasted eleven minutes. At the conclusion of this period the court announced its sentence—the maximum imposable.

Failure of the appointed defense counsel to offer evidence of any of the facts set out in the pretrial offer gives rise to the single issue upon which the petition for review was granted.

The principal rule applicable in this area was set out in United States v Hunter, 2 USCMA 37, 6 █ CMR 37. There we announced that an accused who contends he was inadequately represented must:

". . . reasonably show that the proceedings . . . were so erroneous as to constitute a ridiculous and empty gesture, or were so tainted with negligence or wrongful motives on the part of his counsel as to manifest a complete absence of judicial character."

In the past, we have on numerous occasions been called upon to determine the adequacy of various counsel.

In United States v Parker, 6 USCMA 75, 19 CMR 201, this Court observed that the defense counsel had failed to interview Government witnesses prior to trial, and that his cross-examination of these witnesses at trial strengthened the prosecution's case. It was further noted that counsel failed to examine court members on *voir dire,* and exercised no peremptory challenge, despite the unusual circumstances which brought the court into existence; finally, no effort was made to avoid imposition of the death penalty by adducing evidence in extenuation or mitigation. Holding such representation inadequate, this Court declared:

". . . When we fairly evaluate counsel's efforts from the four corners of the record, we wonder how any counsel could do less for his client."

Again in United States v McFarlane, 8 USCMA 96, 100, 23 CMR 320, it appeared that counsel had "conceded everything, explored nothing, was unprepared on every issue, and made the

least of what he had." Reversal followed.

The two cases mentioned involved the death penalty. But courts-martial are concerned with other than █ rapists and murderers; and all appearing before these tribunals are entitled to adequate representation. This is true whatever the charges and whatever the pleas may be. So in United States v Allen, 8 USCMA 504, 25 CMR 8, an appointed defense counsel limited his activities to the negotiation of a pretrial agreement covering the plea and the sentence ultimately to be approved by the convening authority. He failed to adduce available evidence of strongly mitigating circumstances. We there held that "Whatever practical comforts he may have drawn from the preliminary agreement with the convening authority, defense counsel did not provide the court-martial with anything from which it could determine a just sentence." This omission, we held, prevented affirmance of the proceedings.

Again in United States v Horne, 9 USCMA 601, 26 CMR 381, the available evidence, as shown by the record of trial, presented a strong basis for a defense of entrapment. Yet the appointed defense counsel not only chose to ignore it, but before this Court he declared "a defense of entrapment would be frivolous in the extreme." Adverting to the rule laid down in United States v Hunter, supra, as quoted above, we stated:

". . . By that broad language we did not intend to be understood as saying that the highest degree of professional competency is not expected of an appointed defense counsel."

Reviewing the facts of that case, we held that "the defense counsel's conclusion, as set out in his affidavit before this Court that 'a defense of entrapment would be frivolous in the extreme,' indicates at least such negligence as to constitute ineffective assistance and therefore a denial of due process. His inactivity at trial buttresses this conclusion."

Application of the principles developed in the cited cases to the facts of

the case at bar requires that we disapprove the instant proceedings.

The court-martial was confronted with an unusually lengthy absence by a noncommissioned officer. ■■■■■ ■ The data read by the trial counsel indicated that the six-year period for which this accused enlisted had expired approximately one month prior to the inception of this absence. ' Since he was still on active duty but one inference was possible: This accused was, at the time of his departure, retained in service to make good time lost during the period of his enlistment. Act of May 5, 1950, chapter 169, § 1, 64 Stat 109, 50 USC § 552. Rather than dispel this necessary inference, or ameliorate its impact upon the court-martial in the slightest degree, the defense counsel's interrogation confirmed it, and aggravated its untoward effects. This was accomplished by the showing that the accused had once served in the grade of Staff Sergeant, without explaining the circumstances under which he was reduced. Rather than offering a suggestion of the reasons which prompted the accused's departure, counsel contented himself with a showing that this accused's economic position was enhanced by his delict and his future assured. Thus, the court was left with the certain knowledge of a prior offense or offenses committed by this accused, and were left to speculate about the circumstances of the crime before them. As if to add the capstone to his performance, counsel then in ringing language called for special consideration for his client because of his "high standing in the military community" attained by virtue of his status as a noncommissioned officer—"an office not to be taken lightly, an office of honor that demands respect."

It would be impossible to conjure up a less attractive argument for presentation to men whose lives are devoted to "Duty, Honor, Country." Rather than afford the court a reason for extending clemency, the evidence presented and the argument advanced were calculated to assure imposition of the severest of penalties. And it took but eleven minutes for this court-martial to deliberate, vote, reduce the sentence to writing, and announce in open court that the maximum penalty had been adjudged.

Yet, as noted by the pretrial agreement, the strongest of motives occasioned the accused's departure in this instance. True, a court-martial found him guilty of desertion early in his enlistment, but this finding was reduced to absence without leave. He was then restored to duty under a suspended discharge and served in Korea. So well did he live up to the terms of his probation that not only was the discharge remitted but he was advanced in grade until he became a sergeant. These successive promotions appear adequately warranted by his successful completion of Noncommissioned Officers' School. This progression of competent service most certainly justified the judgment of the commanding officer who, in 1953, gave him the opportunity for rehabilitation. So well established was this man's desire for service that when his organization was preparing for an overseas assignment, he sought to accompany it by re-enlisting. It was then that he learned his years of good service rendered subsequent to his original offense counted for naught, for he was summarily informed that the desertion conviction barred re-enlistment. It is, or should be, perfectly clear that the summary and senseless rejection of one's legitimate aspirations can have but one effect—blind and unreasoning flight. (See, for example, the circumstances giving rise to desertion in United States v Werthman, 5 USCMA 440, 18 CMR 64.)

In a post-trial affidavit, the appointed defense counsel insists that his actions were deliberate and in accord with a soundly devised approach to his case. He states: .

". . . At that time I determined, after many consultations with the accused that the matter referred to in Appellate Exhibit 1, namely a previous conviction of desertion, should not be mentioned at the trial. It was my feeling that after the accused was found guilty of desertion that for me to offer evidence that he had previously been convicted of desertion and given a suspended dishonorable discharge would have been

as detrimental to the accused as offering a previous conviction of murder in mitigation at a case where a defendant has just been convicted of murder. To do so would aggravate rather than mitigate . . . .

". . . It was my theory that by presenting the case in this manner the only derogatory information that the court would have concerning the accused would be the fact that they had just found him guilty of desertion. . . . It was my theory to leave doubt before the court as to why a man who has attained the grade of Sergeant and has no previous would commit such an offense, and that such doubt would operate to the benefit of the accused."

It is not our purpose to supplant the judgment of counsel with our own ideas of sound trial tactics, for we realize fully the easy solutions often suggested by hindsight. However, this affidavit reflects at least three gross misconceptions of the plain facts of the case. First, the accused was not convicted of desertion. In fact and in law, the convening authority's action reduced the offense to absence without leave, an offense incomparably lesser than that charged. Second, "the fact that they had just found him guilty of desertion" was not the only derogatory information before the court. As we have shown, the court was necessarily aware of the existence of prior misconduct from the moment it was informed of the date of his enlistment. Further information of a derogatory nature was disclosed when counsel's interrogation of the accused developed his former higher grade and the fact that he had fared so well while absent in desertion.

It may be that the selection of the alternatives of evidence is the lawyer's severest test. That this lawyer failed, there can be no doubt. After misconceiving the nature of the undisputed evidence available to him, he rejected it in favor of a few questions to his client, the answers to which served only to assure imposition of the maximum penalty. By this unfortunate choice, the court-martial was deprived of the only sound basis for a considered judgment—the actual facts of the case. By concentrating his efforts exclusively upon pretrial arrangements, counsel succeeded only in withholding from the trial forum all matters "from which it could determine a just sentence."

Ordinarily, a rehearing upon the sentence would serve to cure the deficiencies of counsel. However, the defense counsel's posttrial affidavit has required us to examine far deeper into the entire proceedings in this case than is usually required. (See United States v McCormick, 3 USCMA 361, 12 CMR 117.) In it, counsel avers that he "had no contact with the accused at the pretrial investigation as the accused did not request counsel."

The report of investigation required by Article 32 of the Uniform Code of Military Justice, 10 USC § 832, indicates the accused requested counsel at the pretrial proceedings and the appointed defense counsel was designated for that purpose. The report, contrary to requirements, fails to indicate whether or not counsel was present at these proceedings, and, if he was absent, whether and under what circumstances his absence was waived by the accused. Despite this patent deficiency in the report of investigation, the pretrial advice of the staff judge advocate recites:

"There has been substantial compliance with the provisions of Article 32, UCMJ."

Other post-trial affidavits submitted by the investigating officer and the accused disclose that counsel was indeed present, but his activity, for all practical purposes, was limited to advising the accused to remain silent; this, without regard to the importance attaching to the recommendations of the pretrial investigator. United States v Greenwalt, 6 USCMA 569, 20 CMR 285.

The perfunctory treatment of the provisions of Articles 32 and 34 is indicative only to the fact that in this staff judge advocate's office, the pretrial investigation and advice are mere formalities. Here, the failure to accord them more than token compliance puts all

402

that follows in its proper perspective, and certainly sets the tone of the entire proceedings. United States v Parker, supra.

One further matter requires comment. In his review of the trial, the staff judge advocate attached special significance to the defense counsel's failure to present the matters contained in the pretrial offer, for he called the convening authority's attention to that omission. However, despite the opinion of this Court in United States v Allen, supra, he did not discuss—if in fact he considered the matter—the possible effect of this omission upon the substantial rights of the accused. Article 60, Uniform Code of Military Justice, 10 USC § 860; paragraph 85b, Manual for Courts-Martial, United States, 1951.

Thus, in this case, as in United States v Parker, supra, although the findings may be difficult to assail, in the light of the sentence "we are certain that justice will be better served by requiring a new trial under conditions more consonant with [the letter and] the spirit of the Code."

The decision of the board of review is reversed. A rehearing may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

My associates cite two opinions authored by me, namely United States v Hunter, 2 USCMA 37, 6 CMR 37, and United States v Parker, 6 USCMA 75, 19 CMR 201, and argue that they govern the disposition of this case. Strangely, I find not the slightest similarity, factually or legally. On the contrary, this case is *sui generis* and in my opinion can never be catalogued with other decisions because of the finely spun theories my associates advance to dispute their own contention that "It is not our purpose to supplant the judgment of counsel with our own ideas of sound trial tactics, for we realize fully the easy solutions often suggested by hindsight."

I am going to leave to those who now are, or hereafter may become, familiar with the record to determine the validity of all of the suppositions advanced by my associates to support their results. However, I will answer the most controversial for the purpose of illustrating that they are merely second guessing a calculated and defensible position taken by trial defense counsel. However, before pointing out what I believe to be misconception in the after-the-fact speculation, I call attention to the probability that this case is unique. Usually, records of cases showing inadequacy of counsel do not demand such careful weighing of words, phrases, and theories as I find in this opinion to substantiate a claim that the proceedings show a complete lack of judicial character. Such a deficiency is ordinarily so apparent that it is readily discernible to all who read the record. Here, however, my associates are the only individuals who have been able to detect any incompetency of defense counsel, and even they have been forced to limit their attack largely to a choice of tactics on sentence. Significantly, the accused has not turned on his lawyers, as the record of trial shows he was satisfied with their advice and efforts on his pretrial agreement, and to this day he has not contended that he was not fully and fairly advised on each step taken. Nor has he advanced any fact or facts associated remotely with improper representation. Certified defense counsel appeared before a board of review and the only contention made at that level was that as a matter of appropriateness in the exercise of their clemency powers the board should reduce the sentence to a bad-conduct discharge and the period of confinement to six months. On appeal to this Court, no assignment of incompetency of counsel was asserted, but the coup de grâce is that after we spelled out that that issue might be of some importance and it was briefed by appellate defense counsel, they specifically rejected our suggestion. I quote from their brief:

"In this brief it is not the intention of appellate defense counsel to question the competency of the trial defense counsel. For in the record of

trial the motivation of the defense counsel in arguing only the civilian employment aspect of the accused is not clear, albeit it could have been a deliberate move on the part of the defense counsel to stress the fact that the accused had apparently demonstrated that he had been 'rehabilitated' for civilian life."

While I do not contend that we should accept the concessions of appellate counsel if they are not well founded, I do assert that when they cannot honestly argue that trial defense counsel was incompetent, we should be hesitant to use that reason as a basis for reversal. Surely we should not assume inadequacy at all levels.

The first important area of dispute between my associates and me is identified by their statement that there is but one inference which the court could draw from the personal data submitted by trial counsel. If that is true, I wonder why it was never noticed by others intimately connected with the case. To me, it is an inference which is so obscure it would not likely be drawn but, even assuming arguendo it could be under some circumstance, I am sure that in an eleven-minute conference it would escape undetected. Certainly, it had to be specifically called to my attention, and even then I dispute its validity. The data read into the record was this:

"ACCUSED: Donald F. Huff. SERVICE NUMBER: RA 16 297 810. RANK OR GRADE: Sergeant (E-5). ORGANIZATION AND ARMED FORCE: U. S. Army Casual Detachment, Post Provost Marshal Activity, U. S. Army Garrison (Field), Fort McPherson, Georgia. DATE OF BIRTH: 26 October 1929. PAY PER MONTH: Basic $220.00; Sea or Foreign Duty, None; Total, $220.00. CONTRIBUTION TO FAMILY OR QUARTERS ALLOWANCE: None.

"RECORD OF SERVICE: Initial Date of Current Service, 10 September 1951; Term of Current Service, Six years; Prior Service, Three years, no months, six days.

"DATA AS TO RESTRAINT:

Nature of Any Restraint of Accused, Confined; Date, 4 June 1959; Location, Post Stockade, Fort McPherson, Georgia."

To draw the inference which is so clear to my associates, the court members would have to possess remarkable memories and rationalize as follows. They would have to remember particularly all the dates mentioned by trial counsel, noting that the initial date of current service was September 10, 1951; that the enlistment was of six years' duration; and that the period would terminate on September 9, 1957. With that as a starting point, they would have to recall that the specification alleged that the absence commenced on October 5, 1957. The case was tried on July 10, 1959, and I doubt that during the short time the court members were discussing sentence they would be concerned with those refinements. But assuming they were, for them to have inferred from the mentioned dates that the accused was making up bad time for a previous conviction is giving them too much credit for perspicacity. I may be mistaken, but it is my understanding that servicemen are quite frequently held in the service beyond the end of their term of enlistment for medical reasons. I merely suggest this one reason for delay—and there are others— as a basis for the court members to infer that the accused had been retained beyond his enlistment period for health or other reasons which would not necessarily reflect adversely on him. To me that would be more reasonable, for I have a well-founded suspicion that when a soldier appears before a court-martial wearing his sergeants' stripes coupled with a statement by trial counsel that he has no evidence of previous convictions, it is stretching the imagination to find that the court members would remember his personal data, recall that at the time he absented himself, some two years before trial, he was serving less than thirty days beyond his period of enlistment, and then draw the inference that he had been retained in the service because of bad time occasioned by a prior offense.

The next alleged error made by trial defense counsel is that he aggravated

the effect of the previously mentioned compelled inference by showing the accused had once reached the grade of staff sergeant without explaining the circumstances under which he was reduced. This is piling inference on inference, for my associates apparently speculate that the evidence would show a reason for the reduction which did not reflect adversely on accused, whereas the court members were left uninformed and, after having inferred a prior offense, would presume the accused was reduced as a result of a court-martial conviction therefor. There are numerous reasons for the reduction of noncommissioned officers, and as a check on the reliability, of the assumed inference drawn by this Court I find that the records in the Adjutant General's office show that at the time the accused was tried on the first desertion charge he was a corporal. Perhaps he and his defense counsel might not have thought it judicious to show two reductions in rank and the reasons therefor. However, casting aside all conjecture, I did not know it was improper representation to show the capabilities of an individual to reach a high grade in the noncommissioned officers' ranks, nor that he had turned into a useful member of society with no need for rehabilitation and with no necessity of being confined. Moreover, I question the holding that it is good representation to bring before the court the fact that a noncommissioned officer was reduced to the lowest enlisted rank because he was convicted of the crime of desertion when the Government is barred from making that showing. In this connection, much emphasis is placed on the fact that defense counsel made a misstatement when he said the accused was convicted of desertion. In this setting, it seems my brothers are forced to rely on a weak rod when they challenge the use of the word "desertion," for accurately speaking the court-martial found the accused guilty of that offense. The fact that the convening authority reduced the offense to absence without leave does not change the findings made by the court-martial, it merely gave the accused the benefit of clemency at the first review level. But, regardless of nomenclature, the accused was convicted of an offense involving an unauthorized absence of some seven months' duration which carried confinement and a punitive discharge, and had he opened up the subject, the Government could have introduced the record of the prior trial and everything would have been revealed. Moreover, it could have been shown that he was given an opportunity to rehabilitate himself and, while he served for over three years, when he was unable to get the assignment of his choice he once more abandoned the service and became a two-timer, and both times he intended not to return. Now defense counsel is held incompetent because he made an informed choice to avoid that showing. But, even assuming he made an error in judgment, this sort of error does not entitle an accused to a reversal on the grounds of inadequacy. If errors in the choice of tactics make a trial a hollow gesture, then many an accused in both military and civilian courts has been denied his day in court.

Lastly, I am unable to understand the reason for setting aside the plea of guilty and granting a rehearing. The basis assigned seems to have its roots in a bed of cumulative errors as reference is made to inaccuracies in the report of the Article 32 investigating officer and the perfunctory performance of the duties required by Article 34, Uniform Code of Military Justice, 10 USC § 834. Other matters seem to be thrown in as makeweight arguments. With regard to the Article 32 investigation, mention is made of the fact that the report does not show the presence of counsel. That deficiency consists of the failure of the investigating officer to make an "X" in one box on a form. The insignificance of that omission becomes obvious when the record is considered. Appellate defense counsel filed a petition with this Court for appropriate relief based on the assertion that the accused was denied counsel at the pretrial investigation. The record shows this petition was withdrawn when the accused affirmed under oath that he was represented at that hearing by the same counsel who appeared at the trial. The inconsistencies between his affidavit and those of defense coun-

**405**

sel and the investigating officer filed on appeal are readily reconcilable when it is understood that the accused did not consult with his appointed counsel until the investigating officer had collected the evidence which consisted of official documents. At that time, counsel and the accused concluded not to require the investigating officer to repeat his performance. However, any irregularity in the pretrial investigation becomes of little importance in this case. We have repeatedly held that pretrial deficiencies must be raised by appropriate motion at the time of trial and that pleas of guilty waive all but jurisdictional errors. See United States v Rehorn, 9 USCMA 487, 26 CMR 267; United States v Mickel, 9 USCMA 324, 26 CMR 104; United States v McCormick, 3 USCMA 361, 12 CMR 117; and allied cases. I wonder what consideration has been given to those opinions.

As to the alleged perfunctory performance of the staff judge advocate in discharging his duties under Article 34, the contention is made that the staff judge advocate decided, "There has been substantial compliance with the provisions of Article 32, UCMJ," when there was a patent deficiency. That issue is elaborated by the statement that there was only token compliance, but significantly missing is the recitation of any evidence to support the charge. If the record shows any other deficiencies other than the single marking omitted, they appear only in post-trial affidavits which were not in existence at the time the pretrial advice was prepared. And as for the staff judge advocate's post-trial review, in the section on sentence, the convening authority was therein advised of the matters contained in accused's pretrial offer—matters of which he obviously was already aware. It is quite true that after mentioning the fact, the reviewer did not discuss trial defense counsel's omission to apprise the court-martial of those facts. How-

ever, unless one concludes—and my associates are the first to do so—that defense counsel was incompetent, I suppose no issue is raised by the omission which warrants discussion by the staff judge advocate.

Finally, the majority states in the last paragraph of their opinion "the findings may be difficult to assail." That is an understatement for, unless all principles of law are discarded, the findings cannot be assailed. But I wonder why my brothers seek to accomplish the difficult and, in the interest of justice, give the accused a rehearing when he himself does not ask for that relief. Justice is due the accuser as well as the accused, and the most the latter prays for in his petition is that he be granted a rehearing on the sentence. He obtained benefits from a pretrial understanding which resulted in a short period of confinement, and he may be willing to stay by his agreement. He does not represent that he will not again plead guilty, and so I say the disposition ordered by the Court is unwarranted, possibly futile, and it may turn out to be a gratuity unwanted and disclaimed by the accused. Moreover, I suggest the eventuality that this reversal may have the legal effect of voiding the agreement that occasioned the reduction of accused's sentence, thus removing a ceiling on punishment at the rehearing. If so, accused may be prejudiced on his subsequent sentences.

In summation, I believe there is some legal strength to the arguments I have advanced, and, if so, the majority has reversed a case on the ground of alleged incompetency of counsel merely because at this date and at this level it appears to them that a better course of defense could have been adopted at trial.

I would affirm the decision of the board of review.