UNITED STATES, Appellee

v

LAWRENCE RICHARDSON, Private,

U. S. Army, Appellant

21 USCMA 54, 44 CMR 108

No. 23,852
August 20, 1971

*Captain Libero Marinelli, Jr.*, argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr.*, and *Captain Bernard J. Casey.*

*Captain Richard A. Karre* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, Captain John C. Lenahan,* and *Captain Richard L. Menson.*

## Opinion

DARDEN, Chief Judge:

Having been convicted of desertion by a general court-martial consisting of a military judge alone, the appellant now contends that his sentence should be set aside and the charge dismissed because a previous general court-martial had placed him in jeopardy for the same offense. The question to be decided therefore is whether these trial proceedings violate either Article 44, Uniform Code of Military Justice, 10 USC § 844, or the constitutional guarantee of the Fifth Amendment that no person "be twice put in jeopardy of life or limb" for the same offense.

On December 11, 1969, a general court-martial consisting of a military judge alone convened to consider a charge and specification alleging the appellant's desertion from his unit at Fort Lewis, Washington, for the period beginning June 15, 1968, and ending with his apprehension on August 27, 1969. Richardson entered a plea of not guilty.

The Government's case consisted of morning report extracts showing the inception and termination of the unauthorized absence and an extract record of previous convictions offered as evidence bearing upon Richardson's intent. Judicial notice was taken of the distance between Fort Lewis and Chicago and also of the various service installations in the Chicago area.

Richardson testified in reply that he had returned to his home in Chicago, that he was married and had three small children, that he was the sole support of his family and his grandmother, and that family financial problems caused him to secure a civilian job. According to Richardson, before he could return to military control as he intended, he was taken into custody

**55**

by Federal authorities. Nonetheless, the accused was found guilty as charged.

After findings, prosecution placed in evidence Prosecution Exhibit 6, the appellant's enlisted qualification record (DA Form 20).[1] Subsequently, the military judge interrupted defense counsel's argument on sentence and pointed out to him that the qualification record showed Richardson as having been single without dependents at the time of his enlistment. This information contradicted Richardson's earlier testimony that at the time of enlistment he had a wife and two children, with a third expected. A further discrepancy between Richardson's testimony and the above record concerning the various installations at which the appellant served also became apparent.

Following a recess, opposing counsel entered a stipulation to the effect that appellant had started a Class Q allotment in 1967, that the allotment had been verified by the finance office at Fort Knox, Kentucky, and that appellant did have a wife and two children at that time. In addition, Defense Exhibit B is a letter from the appellant's wife indicating the marriage was still in effect. Defense counsel also explained away the apparent inconsistency about the military installations where appellant had served.

Questions by the military judge then disclosed that while defense counsel had looked at the appellant's enlisted qualification record before trial he had not discussed the document with his client. Richardson had not been told that this instrument could be used to impeach his credibility if he testified. In light of this acknowledgment, the military judge decided that the appellant was inadequately represented and had been placed in a position "where perjury could be shown against him." Feeling that perjury would play a part in his sentence considerations, "consciously or otherwise," the military judge

withdrew the finding of guilty and declared a mistrial.

On January 15, 1970, a second general court-martial, again without a jury, convened to try the appellant on the same charge of desertion. Defense immediately moved for dismissal, with double jeopardy as one ground. Portions of the prior trial outlined above were offered in support. Further, the original military judge was called as a court witness. In the following colloquy he explained his decision:

"A. Well, in my case I felt that since counsel had admitted that he had not prepared the accused with regard to something that I considered vital that although I could have declared a mistrial on sentence alone, in my discretion I thought the ends of justice would be better served by a total mistrial. I will admit I could have, and I think it would have been legal for me to have done so, to have declared a mistrial on sentence, for sentence purposes alone, and if I had reached findings of guilty only of a lesser included offense, for example, I probably would have done so.

"Q. And was one of the reasons why you declared said mistrial and removed the findings of the court because of any misgivings on your part as to your decision on the findings?

"A. None whatsoever. As a matter of fact, the material which came out subsequently would have definitely reinforced my decision. But I had no misgivings whatsoever on my findings. I granted a mistrial in findings as well as sentence out of a feeling that since I did not think that defense counsel had prepared the case as fully and as properly as he should have, the accused was entitled to a total new day in court."

When called as a witness, trial counsel advised the court that he had met the military judge on leaving the court building on the afternoon of December 11, 1969. The judge then stated that

---

[1] As the Court of Military Review noted, use of personnel records in the sentencing stage of trial of offenses committed prior to August 1, 1969, is improper. United States v Montgomery, 20 USCMA 35, 42 CMR 227 (1970). That court reassessed the sentence because of the error.

"he could not in his own mind try the case because he would have been sentencing the man for perjury."

At the end of this inquiry the judge at the second proceeding ruled against the motion to dismiss. He found that the mistrial was not declared to save the Government's case and that the original military judge was not improperly motivated, since he thought himself unable to sentence with an open mind. After the trial on the merits the Government prevailed as it had before.

Before reaching the application of the double jeopardy clause of the Fifth Amendment we note the existence of comparable statutory protection to a member of the armed forces under Article 44, Code, supra, 10 USC § 844. After providing that an accused may not be tried a second time for an offense without his permission, this Article continues with this definition:

"(b) No proceeding in which an accused has been found guilty by a court-martial upon any charge or specification is a trial in the sense of this article until the finding of guilty has become final after review of the case has been fully completed."

The reason for such a limitation is obvious. In the military justice system an accused is entitled to an automatic review procedure without his initiating an appeal or a petition. Since successful appeal of a conviction is a waiver of the double jeopardy provision of the Fifth Amendment, Congress provided that regardless of any post-trial action by the accused, the setting aside of a conviction does not bar retrial. See House Report No. 491, 81st Congress, 1st Session, page 23; Senate Report No. 486, 81st Congress, 1st Session, pages 19–20.

Since Richardson's finding of guilty in the first trial never became final, Article 44(b) disposes of the contention that a second trial subjected him to double jeopardy, unless the double jeopardy provision of the Fifth Amendment extends to members of the armed forces broader protection than that con- tained in Article 44. Another way of stating this is that Article 44(b) is dispositive unless it constitutes an unconstitutional limitation on the protections against former jeopardy that a member of the armed forces would have by direct application of the Fifth Amendment.

In civilian jurisdictions, jeopardy under the Fifth Amendment normally attaches in a trial by judge alone when the judge begins to hear evidence. Newman v United States, 410 F2d 259 (CA DC Cir) (1969), certiorari denied, 396 US 868, 24 L Ed 2d 121, 90 S Ct 132 (1969). That the double jeopardy provision of the Fifth Amendment may be invoked at a court-martial proceeding apparently was settled by Wade v Hunter, 336 US 684, 93 L Ed 974, 69 S Ct 834 (1949), rehearing denied, 337 US 921, 93 L Ed 1730, 69 S Ct 1152 (1949). Earlier the United States Court of Appeals for the Fifth Circuit had expressly so held. Sanford v Robbins, 115 F2d 435 (CA 5th Cir) (1940), certiorari denied, 312 US 697, 85 L Ed 1132, 61 S Ct 737 (1941).

Neither this Court nor a court established under Article III of the Constitution has held that Article 44(b) is an unconstitutional limitation on the protections against former jeopardy that a member of the armed forces would have by direct application of the Fifth Amendment. Individual judges of this Court have separately expressed the view that the Fifth Amendment is somewhat broader than Article 44(b). United States v Ivory, 9 USCMA 516, 522, 523, 26 CMR 296 (1958), separate opinions.

Assuming arguendo that the Fifth Amendment double jeopardy provision is broader than Article 44(b), we turn to the most recent Supreme Court holding on the subject. In United States v Jorn, 400 US 470, 27 L Ed 2d 543, 91 S Ct 547 (1971), the trial judge without a request by defense counsel declared a mistrial because he was unsure if prosecution witnesses knew their testimony might subject them to prosecution. A plurality of the Supreme Court held

that the judge abused his discretion. The Court phrased the basic question as being "in what circumstances retrial is to be precluded when the initial proceedings are aborted *prior to verdict* without the defendant's consent." *Id.,* at page 480. (Emphasis supplied.)

The court rejected a suggestion that under Gori v United States, 367 US 364, 6 L Ed 2d 901, 81 S Ct 1523 (1961), a retrial was permissible because in declaring a mistrial the judge had acted in the sole interest of the defendant. The plurality opinion in *Jorn* mentioned the embarrassment of a second trial and the inconvenience of the unnecessary delay it entailed. But these excerpts from the opinion seem to emphasize that an improperly declared mistrial denied the accused the opportunity of ending the first trial with an acquittal.

". . . For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a sua sponte judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal.

. . . . . .

". . . [T]he trial judge must still take care to assure himself that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal.

. . . . . .

". . . Yet, in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." [United States v Jorn, supra, at pages 484, 486.]

In the case before us a finding of guilty had been entered. Thus no question exists about denying ▅▅▅▅▅▅ ▅ the appellant the opportunity of a favorable determination by the first tribunal. If

the Fifth Amendment provisions on double jeopardy are broader than those of Article 44, the result in *Jorn* does not dictate a reversal in the case before us. In declaring a mistrial, the military judge appears to have been motivated at least in part by the desirable objective of assuring effective assistance of counsel. Despite our recognition of such a motive we believe the judge acted precipitately in declaring a mistrial as to the findings, particularly when the inconsistencies between the exhibits and the testimony that caused the military judge to suspect defense counsel's competence were explainable and were explained on the record before the judge declared a mistrial. Since Article 44 (b) provides that what occurred here is not a bar to retrial and since the finding of guilty that was overturned negates any contention the appellant lost an opportunity to be acquitted by the first court to try him, we are unable to find any sound basis for declaring that the error of judgment was prejudicial.

The decision of the Court of Military Review is affirmed.

QUINN, Judge (concurring in part and dissenting in part):

I disagree with the scope of Article 44, Uniform Code of Military Justice, 10 USC § 844, as implied in the principal opinion. Suffice it to note, for example, that, as intimated in the principal opinion, Article 44 (b) would authorize retrial of an accused for murder when he had been found guilty only of manslaughter but it had been determined on review that prejudicial error requiring a rehearing had been committed. Yet a rehearing on that basis is constitutionally impermissible. Green v United States, 355 US 184, 2 L Ed 2d 199, 78 S Ct 221 (1957); see also Benton v Maryland, 395 US 784, 23 L Ed 2d 707, 89 S Ct 2056 (1969).

As to the specific issue of this appeal, this Court has long insisted upon a higher standard of representation by counsel than that his conduct be "ridiculous and empty." See United States v Huff, 11 USCMA 397, 400, 29 CMR 213 (1960). The trial judge "is best situated intelligently" to evaluate

the circumstances presenting a question for a mistrial. Gori v United States, 367 US 364, 368, 6 L Ed 2d 901, 81 S Ct 1523 (1961). If the trial judge erred in concluding that individual military counsel had ineffectively represented the accused, his determination was not so unsupported by the facts as to justify, in my opinion, setting aside his determination as an abuse of discretion. In dealing with the adequacy of counsel "nice calculations as to the amount of prejudice" are to be avoided. Glasser v United States, 315 US 60, 76, 86 L Ed 680, 62 S Ct 457 (1942). It is apparent to me that the trial judge followed that principle.

Ineffective assistance of counsel is certainly ground for declaration of a mistrial. It follows that the critical question is whether ground for mistrial being present the judge should have limited his ruling to the sentence proceedings. Inadequacy during sentence proceedings may cast substantial doubt upon the facial adequacy of counsel's representation of the accused in connection with the merits. See United States v Huff, supra, at page 403. Considering defense counsel's admitted insufficiency of preparation in connection with the sentence, the trial judge could reasonably have concluded that counsel was also inadequate in his preparations in connection with the merits. Also, there is ample support in our cases for ordering in a particular case a rehearing of the entire cause where the prejudicial error occurs during the sentence proceedings. United States v Huff, supra.

For the reasons indicated, I concur in the conclusion that retrial of the accused was not improper.

FERGUSON, Senior Judge (dissenting):

I dissent.

Article 44(a), Uniform Code of Military Justice, 10 USC § 844, provides:

". . . No person may, without his consent, be tried a second time for the same offense."

See also Fifth Amendment, Constitution of the United States, and my separate opinion and that of Chief Judge Quinn in United States v Ivory, 9 USCMA 516, 522, 523, 26 CMR 296 (1958). Since that is what occurred in this case, the accused's conviction was constitutionally and statutorily impermissible, must be reversed, and the charge and its specification dismissed. United States v Stringer, 5 USCMA 122, 17 CMR 122 (1954); United States v Jorn, 400 US 470, 27 L Ed 2d 543, 91 S Ct 547 (1971). Cf. Wade v Hunter, 336 US 684, 93 L Ed 974, 69 S Ct 834 (1949), rehearing denied, 337 US 921, 93 L Ed 1730, 69 S Ct 1152 (1949). As this Court stated in United States v Waldron, 15 USCMA 628, 630, 36 CMR 126 (1966):

"Under the Fifth Amendment to the Constitution of the United States and the Uniform Code of Military Justice, no person may be twice put in jeopardy for the same offense. Consequently, if an accused is brought to trial before a court-martial and the proceedings are terminated after jeopardy attaches, but without legal justification, the accused is protected against another trial for the same offenses. Downum v United States, 372 US 734, 742, 10 L Ed 2d 100, 83 S Ct 1033 (1963); United States v Schilling, 7 USCMA 482, 22 CMR 272 [1957]. . . . A second trial does not violate the constitutional protection, if the first trial ended by reason of the proper grant of a mistrial; conversely, if the mistrial was improperly granted, a motion to dismiss is appropriate if the accused is again brought to trial on the same charges. United States v Stringer, 5 USCMA 122, 17 CMR 122 [1954]; United States v Richard, 7 USCMA 46, 21 CMR 172 [1956]."

Subsection (b) of Article 44, Code, supra,[1] does not delimit the intendment of subsection (a), for the former only "expresses a qualification of the rule of jeopardy in the case of *an appeal*

---

[1] "(b) No proceeding in which an accused has been found guilty by a court-martial upon any charge or specification is a trial in the sense of this article until the finding of guilty has become final after review of the case has been fully completed."

*from a conviction.*" (Emphasis supplied.) United States v Wells, 9 USCMA 509, 512, 26 CMR 289 (1958). This was the intention of the Congress as is apparent from the discussion of this Article by the drafters of the Code. See Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 1047–1052; Hearings before Senate Armed Services Committee on S. 857 and H. R. 4080, 81st Congress, 1st Session, pages 321–325. Compare House Report No. 491, 81st Congress, 1st Session, page 23, with Senate Report No. 486, 81st Congress, 1st Session, pages 19–20.

We deal in this case with a second trial, over the objection of counsel, occasioned by the fact that following findings of guilty in a trial by judge alone, and prior to the imposition of sentence, the military judge declared a mistrial based on his belief that the accused had been inadequately represented by counsel. In his defense to a charge of desertion (Article 85, Code, supra, 10 USC § 885), the accused related that he was married. However, a DA Form 20 (Enlisted Qualification Record), introduced by the Government, reflected his marital status as single. When the military judge called this to counsel's attention, a recess was granted. Thereafter, trial and defense counsel entered into a stipulation that the accused was in fact married and the father of two children; that he had started a Class Q allotment in 1967; and that the marriage had been verified by the finance office at Fort Knox. In addition, defense counsel produced a letter from the accused's wife indicating that the marriage was still in effect. In short, the entry in the DA Form prepared and maintained by the Government was erroneous. Despite this evidence, the military judge took the position that defense counsel had placed his client in a position "where perjury could be shown against him," by allowing him to testify in contravention of the entry in the DA Form without first informing the accused that the instrument could be used to impeach his credibility.[2] Feeling that perjury would play a part in his sentence considerations, "consciously or otherwise," the military judge withdrew the finding of guilty and declared a mistrial. The case was returned to the convening authority and a new court was appointed to try the accused.

Trial by court-martial, unlike the civilian procedure, includes the imposition of sentence *by the tribunal appointed to hear the case.* See generally Articles 18–20, Code, supra, 10 USC §§ 818–820. In United States v Jorn, supra, the Supreme Court stated:

". . . [W]here the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.' See Wade v Hunter, 336 US 684, 689, 93 L Ed 974, 978, 69 S Ct 834 (1949)." [400 US, at page 484.]

Jorn was charged with helping to prepare fraudulent income tax returns. The allegedly fraudulent returns were introduced into evidence by an Internal Revenue Service agent. When the first of the witnesses-taxpayers, whom the defendant allegedly aided in the preparation of their returns, was called, defense counsel suggested these witnesses be warned of their constitutional right not to say anything that might be used in a subsequent criminal prosecution against them. The judge gave the warning as requested. The first witness expressed a willingness to testify and stated that he had been warned of his constitutional rights when the Internal Revenue Service first contacted him. The trial judge indicated, however, that he did not believe the witness had been given any warning at the time he was first contacted and refused to permit him to testify until he had consulted an attorney. He then asked the prosecuting attorney if his remaining witnesses were similarly situated and received an affirmative

[2] Defense counsel, upon questioning by the judge, admitted that he had not noticed the error in the Form.

reply. The judge, expressing the view that any warnings that might have been given were probably inadequate, proceeded to discharge the jury. He then called all the taxpayers into court and informed them of their constitutional rights and of the considerable danger of unwittingly making damaging admissions in these factual circumstances. Finally, he aborted the trial so the witnesses could consult with attorneys. The case was set for retrial before another jury, but on a pretrial motion by the defendant, the judge dismissed the information on the ground of former jeopardy.

On direct appeal by the Government, the Supreme Court affirmed the action of the trial judge. In so doing, it said:

". . . [W]e must conclude that the trial judge here abused his discretion in discharging the jury. Despite assurances by both the first witness and the prosecuting attorney that the five taxpayers involved in the litigation had all been warned of their constitutional rights, the judge refused to permit them to testify, first expressing his disbelief that they were warned at all, and then expressing his views that any warnings that might have been given would be inadequate. Appendix 41–42. In probing the assumed inadequacy of the warnings that might have been given, the prosecutor was asked if he really intended to try a case for willfully aiding in the preparation of fraudulent returns on a theory that would not incriminate the taxpayers. When the prosecutor started to answer that he intended to do just that, the judge cut him off in midstream and immediately discharged the jury. Appendix 42–43. It is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so. When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of this mistrial. United States v Perez, 22 US (9 Wheat) 579, 580, 6 L Ed 165, 166 (1824). Therefore, we must conclude that in the circumstances of this case, appellee's reprosecution would violate the double jeopardy provision of the Fifth Amendment."

In my opinion, the precipitate action of the military judge in declaring a mistrial in this case precluded the retrial of this accused. United States v Jorn, supra. The accused obviously had not committed perjury by testifying as to his marriage and there was no evidence of inadequate representation by defense counsel. The military judge simply refused to accept the stipulation of counsel and the letter from the accused's wife as evidence that the official record was in error. Ironically, the official record, DA Form 20, was not even admissible in evidence (United States v Montgomery, 20 USCMA 35, 42 CMR 227 (1970)), a fact recognized by the Court of Military Review. Since a mistrial was improperly declared, the defense counsel's motion to dismiss on the ground of double jeopardy should have been granted. United States v Waldron, supra.

I would reverse the decision of the Court of Military Review and order the Charge and its specification dismissed.