**UNITED STATES**

v.

**Airman Basic Onofre E. LOPEZ, FR 550–47–6600 United States Air Force.**

**ACM S25275.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 1 April 1981.

Decided 22 Oct. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens, Captain Richard A. Morgan. Captain C. Richard Pennington submitted a brief on behalf of the accused.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before POWELL, KASTL, and MAHONEY, Appellate Military Judges.

**DECISION**

MAHONEY, Judge:

Despite his pleas of not guilty, the accused stands convicted of absence without leave (AWOL) in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. The accused's counsel on this review reassert several of the contentions of the trial defense counsel: that the accused was authorized to be absent; that he was charged as AWOL from the wrong unit; and that the documentary evidence used by the prosecution was prepared by the wrong officials, or was otherwise not in compliance with the Military Rules of Evidence. Since we agree with the first contention, we need not discuss the others.

Following his conviction by special court-martial, the accused was confined at the Joint Forces Correctional Facility, Camp Smedley D. Butler, Okinawa, Japan. In approving the sentence, the convening authority, at Kadena Air Base, Okinawa, designated the 3320th Corrections and Rehabilitation Squadron, Lowry Air Force Base, Colorado, as the place of confinement. Subsequently, the accused was temporarily paroled for the purpose of traveling, without escort to that confinement facility. Prior to traveling as an unescorted prisoner the accused promised in writing:

> In consideration of being placed in parolee status for purpose of traveling to the 3320th CRS, Lowry AFB, Co., I agree that I will abide by the restrictions specified below, realizing that violations of these or local regulations may result in loss of accrued good conduct time and may subject me to disciplinary action under the UCMJ....
>
> I will report directly to my new unit of assignment or other designated place or individual without delay....
>
> I understand that I must report to Bldg. # 962, at the 3320th CRS, Lowry AFB, Co., without delay.[1]

The government's position at trial was that these assurances from the accused, together with Duty Status Changes (Air Force Forms 2098) reflecting an unauthor-

---

1. The format for the parole agreement is set forth in paragraph 5–34, Air Force Regulation 125–18, Operation of Air Force Correction and Detention Facilities, 1 February 1980. Several other conditions of the agreement, which were or may have been violated by the accused are not relevant to our discussion. The restriction quoted in the text might be construed as a promise by the accused not to *take* leave, but the issue presented by the charged offense is whether the accused's absence was *authorized*.

ized absence from 0040 hours on 31 October 1980 to 1600 hours on 28 January 1981, proved the accused's guilt beyond reasonable doubt. Clearly, the duty status records were sufficient, *prima facie*, to support the conviction. *United States v. Demings*, 22 U.S.C.M.A. 483, 47 C.M.R. 732 (1973). However, the defense introduced in evidence a copy of the accused's Permanent Change of Station (PCS) order, which is appended to this opinion. In block 10 of those orders is typed the word "YES" following the printed acronym "DDALVP." The term "DDALVP" means "Delay en route authorized chargeable as ordinary leave provided it does not interfere with reporting on date specified and provided individual has sufficient accrued leave." Air Force Manual 11–2, Air Force Abbreviations, 1 January 1975. Thus, as contended by the trial defense counsel, it appears that the accused *was* authorized leave, subject to two conditions: (1) that the accused had accrued leave, and (2) that he report on or before any specified reporting date.[2]

Addressing these conditions in reverse order, block 7 of the PCS order directs the accused to "REPORT TO COMDR, NEW ASSIGNMENT NLT [Not Later Than]

UPON ARRIVAL."[3] Clearly, the only reasonable construction of this direction is that the accused was required to report when he arrived at Lowry Air Force Base.[4] Conversely, this meant that the accused need not report until he exhausted any accrued and/or advance leave to which he was entitled. No evidence was adduced at trial concerning the status of the accused's accrued leave balance. Even if we infer from the AF Form 2098, Duty Status Change, dropping the accused AWOL that no advance leave (in excess of accrued leave) was authorized by the losing unit commander, the possibility exists that the accused had accrued in excess of 60 days leave which could have been charged against his 89 day absence. Reconciliation of the leave status should have appeared on the travel settlement voucher when the accused arrived at Lowry Air Force Base, but no evidence was presented on that point.

The situation presented is a deficiency of proof as to an essential element of the offense: that the accused's absence was *without authority* from anyone competent to give him leave or permission to be absent. Indeed, the contrary appears—the accused *was* authorized to be absent.[5] We are

---

2. Delay en route PCS is authorized by the losing unit. Paragraph 1–9, Air Force Manual 177–373, Vol. III, Joint Uniform Military Pay System Leave Policy and Procedures, 19 November 1979. The authorization is reflected in block 7 of the PCS orders. There is no paperwork separate from the PCS orders necessary to authorize or implement such leave. It is administratively accounted for by the gaining finance office when the member files his travel voucher. Paragraph 7–2, AFM 177–373, Vol. III, *supra.* There is no requirement for the member to affirmatively indicate by any means (such as by "signing out") that he is entering a leave status. "All travel-related leave is reported after the fact." Paragraph 7–3, AFM 177–373, Vol. III, *supra.*

3. Ordinarily a precise RNLT date would be specified, but orders to Air Training Command Technical Training facilities are exempt from that requirement. "Instead, such orders contain a statement to the effect that those members report to their new assignment or location a specified number of days following departure ...." Air Force Regulation 35–40, Military Personnel Strength Accounting Methods, 11 February 1974, paragraph 2–3, NOTE (Change 6, 28 June 1976). Had this regulatory require-

ment been followed, the patent ambiguity in the accused's PCS orders would have been avoided.

4. No doubt the accused was given more specific directions as to reporting time pursuant his flight reservations, as anticipated in block 22 of the PCS orders (see appendix). However, no evidence of such directions appears in the record.

5. The prosecution called the gaining unit commander to testify that his unit (the 3320th CRS) had not authorized the accused leave. This evidence is of no probative value, because the gaining unit commander is not the authority authorizing leave en route PCS. The only time the gaining unit has a role in the PCS leave process is when the accused, having departed the losing unit, calls the gaining unit to request an extension of the RNLT date, which did not occur in this case. Paragraph 2–3a, Air Force Regulation 35–40, Military Personnel Strength Accounting Methods, 11 February 1974; Table 1–1, Rule 7, Air Force Manual 177–373, Vol. III, 19 November 1979.

unable to determine whether he exceeded the scope of that authority due to lack of a specific reporting date, and due to a lack of proof as to his accrued leave balance. Even if we were inclined to speculate that the accused could not have had sufficient accrued leave to offset the entire 89 days of absence, we could not with any degree of confidence set an inception date for an AWOL.[6] We recognize full well that a later inception date and a shorter period of absence constitute a lesser included offense. *United States v. Harris,* 21 U.S.C.M.A. 59, 45 C.M.R. 364 (1972). We decline, however, to infer that the accused could have had no more than a certain number of days accrued leave, thus rendering him AWOL by some arbitrary point in the 89 day period between his departure from Okinawa and his apprehension by civilian police.[7] Consequently, the prosecution failed to prove that any portion of the absence was without authority. *See generally, United States v. Cuffee,* 10 M.J. 381 (C.M.A.1981); *United States v. Verdi,* 5 M.J. 330 (C.M.A.1978).

We entertain no doubt that no one, least of all the accused, thought he was authorized leave while traveling as a prisoner on temporary parole between confinement facilities. Nonetheless, "if the absence is authorized, even though erroneously, military control is not lost . . . ." *United States v. Hale,* 20 U.S.C.M.A. 150, 42 C.M.R. 342, 349 (1970). The government had its day in court and failed to prove the charged offense. Thus, we conclude that the findings of guilty and the sentence are incorrect in law and fact, and they are set aside. The Charge and specification are dismissed.

POWELL, Senior Judge, and KASTL, Judge, concur.

6. If we were to assume that the accused had the normal maximum number of accrued leave days on 1 October (60) and continued to accrue leave at the normal monthly rate (2.5) while in a leave status, the inception date would be 67.5 days after that charged, or about 3 January 1981. The offense of AWOL occurs, however, on the inception date. *United States v. Emerson,* 1 U.S.C.M.A. 43, 1 C.M.R. 43 (1951). Depending upon the accused's *actual* leave balance, the offense could have occurred any time between the charged date and that date. And, if the accused fell within an exception to the accrued leave restrictions, see note 7, *infra,* the offense could have occurred at any time after January 3rd, or not at all. Viewed in this posture, the evidence does not permit us to infer *any* date of inception beyond a reasonable doubt.

7. Generally, only 60 days' accrued leave may be carried over into the new fiscal year, beginning 1 October each year. Paragraph 1–45d, AFM 177–373, Vol. III, *supra.* There is, however, a specific exception for members serving in hostile fire areas. Paragraph 1–27, AFM 177–373, Vol. III, *supra.* Other exceptions are made *ad hoc.* We note, for example, that Air Force air traffic controllers on temporary duty with the Federal Aviation Administration were recently granted an exemption to carry in excess of 60 days' accrued leave into FY 1982. We know that the accused is not an air traffic controller, but we can not assume that he fails to fall into some other exception to the rule.

## APPENDIX

| REQUEST AND AUTHORIZATION FOR PERMANENT CHANGE OF STATION · MILITARY |
| --- |
| *(THIS FORM IS AFFECTED BY THE PRIVACY ACT OF 1974 · USE BLANKET PAS · AF FORM 11)* |

The following individual will proceed on permanent change of station.

| 1. GRADE, LAST NAME, FIRST, MIDDLE INITIAL, SSAN | 2. POAFSC/CAFSC | 3. AIRMAN PAY GRADE | 4. ☐ OVER 2 YEARS SERVICE (Sgt Only) |
| --- | --- | --- | --- |
| AB LOPEZ, ONOFRE E., 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 | 99008 | 31 | |

**5. TDY**

| 6. PDD | 7. REPORT TO COMDR, NEW ASSIGNMENT NLT | 8. TED | |
| --- | --- | --- | --- |
| N/A | UPON ARRIVAL | Oct 80 | ☒ PCS WITH PCA   ☐ PCS WITHOUT PCA |

| 9. SECURITY CLEARANCE | 10. DOALVP | 11. LEAVE ADDRESS | | 12. TPC WITH ___0___ DAYS |
| --- | --- | --- | --- | --- |
| None | YES | N/A | | TRAVEL TIME PERMITTED |

| 13. UNIT, MAJOR COMMAND, AND ADDRESS OF UNIT TO WHICH ASSIGNED | 14. UNIT, MAJOR COMMAND, AND ADDRESS OF UNIT FROM WHICH RELIEVED |
| --- | --- |
| 3320 Corr and Rehab Sq (ATC) Lowry AFB, CO 80230 | 603 MASS (PAF) APO SF 96239 |

15. Individual elected to serve ☐ Accompanied tour ☐ All others tour ☐ Dependent(s) prohibited within oversea area ☐ Dependent(s) will not relocate

| 16. TRAVEL OF DEPENDENT(S) IS AUTHORIZED | 17. AUTHORITY FOR CONCURRENT TRAVEL | 18. VOLUNTEER STATUS |
| --- | --- | --- |
| ☐ CONCURRENT ☐ TO A DESIGNATED LOCATION | | ☐ VOLUNTEER ☐ NON-VOLUNTEER |

| 19. DEPENDENT(S) (List names of dependent(s) and DOB of children) | 20. EXCESS BAGGAGE AUTHORIZED |
| --- | --- |
| | _____POUNDS _____PIECES |
| | 21. DISLOCATION ALLOWANCE CATEGORY   N/A |

**22. OVERSEA TRANSPORTATION DATA·**

A. ☒ Comply with MTA (DD Form 1482)

B. ☒ Member will comply with reporting time and flight reservations in the MTA or as arranged by the TMC per AFM 75-8; Atch 1, and is not auth to depart this station before receipt of validated MTA or GTR (SF 1169) from the TMO.

C. ☐ TDY station will obtain flight reservations. Member is not auth to depart TDY station before receipt of validated MTA or GTR from the TMO.

D. ☐ Dependent(s) will comply with reporting data and flight reservations in the MTA.

**23. HOUSING AVAILABILITY (Oversea Assignment Only). (Check applicable block)**

A. ☐ Will be available within 20 weeks. Transportation of dependents and shipment of HHG authorized to a designated location but will exhaust further travel and transportation entitlements until member receives new PCS orders. Dependents are authorized shipment of unaccompanied baggage to a designated location and subsequent shipment to the member's oversea duty station.

B. ☐ Will not be available within 20 weeks. Transportation of dependents, shipment of HHG and unaccompanied baggage authorized to designated location and subsequently to member's oversea duty station.

**24. PCS EXPENSE CHARGEABLE TO** 5713500 321 5871,0* *(Insert M, D, H, J, L, T, or Y)* S503725

CIC: 4 5 648 0070 503725    TAC: F98D

NONTEMPORARY STORAGE CHARGEABLE TO: 5703500 320 P5878.ON 503725

| 25. TDY EXPENSE CHARGEABLE TO | 26. AUTHORITY AND PCS CODE |
| --- | --- |
| | AFR 35-16, Table 7-1 ITEM 22. AAN: (SeePmks |

Pursuant to AFR 30-15, you will report to the base housing referral office servicing your new duty station before entering into any rental, lease, or purchase agreement for off-base housing.

**27. REMARKS** *(Submit travel voucher within 5 workdays after completion of travel. If TDY en route is authorized, attach receipts showing cost of all lodgings used.)* MBR WILL NOT DEPART UNTIL CLEARED/RELEASED BY CBPO. ITEM 26: 1000NG5918. Auth for transfer is 3320CRS/CC Lowry AFB, CO 241631Z Oct 80 Msg. FPR will be fwd to 3415ABG/DPMUM and UIF will be fwd to 3415ABG/DPMQS. SCMO-13 dtd 19 Sep 80.

| 28. DATE | 29. TYPED NAME, GRADE, AND TELEPHONE NO. OF CBPO OFFICIAL | 30. SIGNATURE |
| --- | --- | --- |
| 28 Sep 80 | FRANK L. NOREN, SMSGT, DPMJ, 42012 | *Frank L. Noren* |

| 31. DESIGNATION AND LOCATION OF HEADQUARTERS DEPARTMENT OF THE AIR FORCE | 32. SPECIAL ORDER NO. | 33. DATE |
| --- | --- | --- |
| HQ 18 CSGP (PACAF) APO SAN FRANCISCO 96239 | AA-5749 | 28 Oct 80 |
| | 34. TDN | |
| | FOR AME COMMANDER | |

| 35. DISTRIBUTION | 36. SIGNATURE ELEMENT OF ORDERS AUTHENTICATING OFFICIAL |
| --- | --- |
| "A"    4 - 3320 CRS/CC, Lowry AFB, CO 80230 | OFFICIAL ...CIO, Capt, USAF ...tral Base Admin |

| 37. ADDRESS OF GAINING CBPO |
| --- |
| 3415 ABG/DPM, Lowry AFB, CO 80230 |

AF FORM 899 (REVISED) APR 77