**UNITED STATES, Appellee,**

v.

**Private First Class Landry T. WEATH-ERSPOON, 306–82–6823, United States Army, Appellant.**

**ACMR 9202056.**

U.S. Army Court of Military Review.

25 Feb. 1994.

For Appellee: Captain Kenneth G. Wilson, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Major Joseph C. Swetnam, JAGC (on brief); Captain John G. Giovannelli, JAGC.

Before WERNER, LANE, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

LANE, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of three specifications of wrongful distribution of small amounts of marijuana and two specifications of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for sixty months, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant asserts, inter alia, that: (1) he was denied a speedy trial on two specifications previously referred to another court; (2) the military judge erred in admitting a record of nonjudicial punishment filed in a

counter-intelligence investigative record; and (3) the sentence to confinement for sixty months is inappropriately severe. We find no denial of a speedy trial, but that the admission of the record of nonjudicial punishment was error and the sentence inappropriate.

## I. Speedy Trial

The speedy trial issue in this case focuses of two matters: the effect of a withdrawal of charges and the granting of a delay by the military judge. The following chronology will put these matters in context.

On 26 February 1992, six specifications involving possession, use, and distribution of small amounts of marijuana were preferred against the appellant. After several months, a pretrial agreement was negotiated which resulted in referral of the specifications to a special court-martial empowered to adjudge a bad-conduct discharge (BCD special court-martial). On 29 June 1992, the appellant was arraigned and, after the three possession specifications were dismissed as multiplicious, pled guilty to the three specifications involving use or distribution. However, after a careful inquiry, the military judge refused to accept the guilty plea to the distribution specification as the appellant's description of events raised the defense of entrapment.[1] The trial counsel then stated that he desired to discuss "the level to which this case has been referred" with the convening authority. At this point, because of two lengthy defense delays, the government was only accountable for forty-nine days. The military judge granted the government a delay until the close of business on Friday (four days later) to decide whether to proceed with the charges at the BCD Special level, or to withdraw the charges and proceed differently.

The next day, 30 June 1992, the acting staff judge advocate advised the convening authority of the plea problem and recommended that he "withdraw the charge and its

specifications" from the special court-martial. The same day, the convening authority signed a memorandum to the appellant's first level (troop) commander so stating. On 9 July 1992, the troop commander signed a new charge sheet containing three specifications identical to those that had been withdrawn ("original specifications") plus three new ones,[2] and forwarded them with a recommendation for trial by general court-martial.

On 3 August 1992, the specifications were so referred and trial began on 11 September 1992. After one of the "original specifications" was dismissed at the government's request due to an absent witness, the defense moved to dismiss the other two "original specifications" for lack of a speedy trial. By this time, the government was alleged to be accountable for 123 days. The government argued that the withdrawal and new preferral restarted the speedy trial period on 9 July 1992. The military judge found that while "withdrawal and dismissal are not the same ... they have similar impact," and denied the motion.

On appeal, the government also contends that even if the military judge was wrong as to the impact of withdrawal, the government was only accountable for 119 days as there was a four-day judge-approved delay from 30 June 1992 (Tuesday) through 3 July 1992 (Friday). In oral argument, the defense contended that, because the withdrawal occurred the day after the delay was granted, the government is only entitled to a one-day delay.

## A.

■ Rule for Courts–Martial 707 [hereinafter R.C.M.] provides that an accused not under restraint will be brought to trial within 120 days of the date charges are preferred. If charges are dismissed in cases where

---

1. The appellant also contends that this was error, and that he was prejudiced by the loss of the pretrial agreement. We disagree. It is clear that the military judge acted properly in refusing the plea. Even after the appellant was given a recess to confer with his counsel during the providence inquiry, he continued to indicate a lack of predisposition to distribute marijuana, saying he did it only because his "friend" (now a

police informant) persisted in his requests (twelve or thirteen calls in an eleven-day period).

2. There was also a second charge of perjury, for the appellant's testimony during the providence inquiry at the earlier trial, but it was severed and played no part in these proceedings.

there is no pretrial restraint, a new 120–day time period begins on the date of repreferral or the imposition of restraint. R.C.M. 707(b)(3)(A). We find that the withdrawal of charges did not restart the speedy trial clock.

▮ The military judge erred in stating that dismissal and withdrawal have the same impact. Charges and specifications are "preferred" when they are signed under oath by a person subject to the UCMJ. Article 30, UCMJ, 10 U.S.C. § 830; R.C.M. 307. "Referral" is the directing of the trial of any preferred charges. Article 34, UCMJ, 10 U.S.C. § 834; R.C.M. 601. Withdrawing charges from a particular forum vitiates the referral, but the charges remain preferred; the only way they may be "un-preferred" is for the convening authority to dismiss them. *United States v. Gray,* 26 M.J. 16, 19 (C.M.A. 1988); *United States v. Mucthison,* 28 M.J. 1113, 1115 (N.M.C.M.R.1989) (citing the discussion of R.C.M. 604 that withdrawn charges should be referred anew promptly or dismissed). Unless a convening authority acts to dismiss the withdrawn charges, R.C.M. 707(b)(3) does not apply, and the speedy trial clock continues to run. *United States v. Britton,* 26 M.J. 24, 26 (C.M.A. 1988). Finally, there are no additional facts presented to show any intent on the part of the convening authority beyond the plain language of his actions.[3]

### B.

▮ In determining whether there has been a denial of a speedy trial, delays approved by a military judge are excluded. R.C.M. 707(c). "The decision to grant or deny a reasonable delay is a matter within the sole discretion of the . . . military judge." R.C.M. 707(c)(1) discussion. While there have been no judicial interpretations of this current rule, enacted in 1991, at least one

commentary suggests that it is similar to the catch-all provision of the old R.C.M. 707(c)(9) ("[a]ny other period of delay for good cause"). 1 Francis A. Gilligan & Fredric I. Lederer, Court–Martial Procedure § 17–73.10 (1991). Thus, the granting of a delay is reviewable for abuse of discretion and reasonableness of length. *See United States v. Longhofer,* 29 M.J. 22, 27 (C.M.A.1989). We find that the military judge did not abuse his discretion in granting a delay, and that four days was a reasonable period.

The accused had negotiated a pretrial agreement, waiving his right to an Article 32, UCMJ, 10 U.S.C. § 832 investigation and agreeing to be tried by a judge alone in exchange for referral to a BCD special court-martial. Finally, after some lengthy defense delays (1 March 1992 to 30 April 1992 and 15–28 June 1992), he came to trial, six months after the last charged offense. Then, after being given two "bites at the apple," he continued to rationalize his actions so that the military judge was forced to reject his guilty plea on the distribution specification. Certainly, with this situation, the government was entitled to a chance to decide how to proceed next in this case without incurring any penalty. Thus, the granting of the delay was clearly not an abuse of discretion.

▮ Giving the government four days to evaluate their case, prepare advice for the convening authority, schedule an appointment with the convening authority, and obtain his decision was not the least bit unreasonable. The fact that they obtained a withdrawal decision in one day is commendable but, after the situation created by the appellant's own indecision, should not result in a penalty to the government or a windfall to

---

3. In *United States v. Lorenc,* 30 M.J. 619 (N.M.C.M.R.1990), the convening authority, after "withdrawing" the charges, sent the accused a letter saying that the charges were "dropped," and told the accused's commander to remove the "legal hold" that had been placed on the accused. These acts were held to evidence an intent to dismiss the charges, notwithstanding the actual terms used. In the case sub judice, the preferred charges were returned to the troop commander to begin anew the referral process,

not the preferral process, as to these specifications. There is no action by the convening authority indicating a desire to stop the prosecution. That the troop commander elected to prefer additional specifications and, for administrative ease, put them all on a new charge sheet (thus repreferring the original specifications) does not change the legal character of these specifications as pending throughout this entire time period.

the appellant.[4]

## II. Record of Nonjudicial Punishment

■ The prosecution offered a 15 January 1988 record of nonjudicial punishment—for use of marihuana by the appellant at a prior duty station—in aggravation on sentencing. The authenticating certificate stated that it was a true copy of "holdings of the Investigative Records Repository, U.S. Army Central Security Facility" and was stored "as prescribed by Army Regulation 381–45." The defense objected to the document "as being stale, untimely and from a prior enlistment where [the appellant] received an Honorable Discharge." The military judge overruled the objection without further discussion, saying that it "appears to be in proper format, properly initialled off and executed." On appeal, the appellant asserts that this record was not properly maintained in Army records as it should have been removed from the appellant's personnel records no later than 15 January 1990. Army Reg. 27–10, Legal Services: Military Justice, paras. 3–37b(1) & 3–44b (22 Dec. 1989) [hereinafter AR 27–10].[5]

■ Rule for Courts–Martial 1001(b)(2) allows the prosecution, "[u]nder regulations of the Secretary concerned," to introduce "from the personnel records of the accused" evidence of the character of the accused's prior service. Personnel records include records made or maintained "in accordance with departmental regulations" to "reflect the past military efficiency, conduct, performance, and history of the accused." *Id.* Thus, departmental regulations are critical to the resolution of this issue. *Fontenot,* 29 M.J. at 247; *United States v. Smith,* 29 M.J. 736, 739 (A.F.C.M.R.1989). We find that, under applicable Army regulations, this document was not properly maintained in personnel records of the appellant and was inadmissible. We will address the prejudice arising therefrom below, and take corrective action in our decretal paragraph.

Army Regulation 640–10, Personnel Records and Identification of Individuals: Individual Military Personnel Records (31 Aug. 1989) [hereinafter AR 640–10] is the controlling Army regulation for personnel records. *Fontenot,* 29 M.J. at 247; *United States v. Shears,* 27 M.J. 509 (A.C.M.R.1988). Chapter 1 makes it clear that there are three "personnel records"[6]: the Official Military Personnel File (OMPF), the Military Personnel Records Jacket (MPRJ), and the Career Management Individual File (CMIF). These records are created and maintained to document and manage a soldier's military service. AR 640–10, para. 1–5a. Once filed in a personnel record, documents will not be removed except as provided for by law or that regulation. *Id.* at para. 1–5b. With respect to DA Forms 2627 (Record of Proceedings

---

4. During oral argument, appellate defense counsel argued that when the convening authority withdrew the charges from the special court-martial on 30 June 1992, the military judge lost jurisdiction over the proceedings. Therefore, the four-day delay terminated at that time and the government was accountable for 122 days. We disagree. While R.C.M. 707(c)(1) does not cover the situation *sub judice,* it does contemplate that both convening authorities and military judges will rule on delay requests relating to charges not referred to a specific court-martial. In the Army, however, the judges' authority is inchoate (that is, not perfected by secretarial regulations). We are satisfied, therefore, that strict concepts of jurisdiction are inapplicable here. The judge-granted delay, being a sound exercise of discretion and reasonable in length given the appellant's failure to plead providently, was clearly an authorized act when done and survives the withdrawal, as the specifications remained pending. Furthermore, as the defense had immediate knowledge of the withdrawal, it could have gone to the convening authority with a demand for trial or a request to modify or terminate the judge-granted delay.

5. In oral argument, the government suggested we apply the waiver doctrine because trial defense counsel's objection had not referred to AR 27–10. Under the circumstances, and because this was the most prejudicial of the three prior punishments (being the only one involving drugs), we decline to construe the defense objection that narrowly. The objection was, in part, that the record was untimely; the argument on appeal is that the record was not timely removed from Army files. Furthermore, the military judge overruled the objection on appearances, without any examination of the document or its source. Fairness dictates that we not also summarily disregard this matter. *See United States v. Fontenot,* 29 M.J. 244, 246 (C.M.A.1989).

6. AR 640–10, Glossary, defines "personnel records" as "[a] collection of documents maintained as a single entity that pertains to the military career of a particular soldier."

under Article 15, UCMJ, 10 U.S.C. § 815) in the MPRJ and OMPF, the regulation provides the same filing and removal instructions as found in AR 27–10. *Compare* AR 640–10, Table 3–1 *with* AR 27–10, para. 3–37b(1).

▮ The government argues that the offered evidence was properly maintained at the Investigative Records Repository (IRR) under Army Regulation 381–45, Military Intelligence: Investigative Records Repository (IRR) (10 Aug. 1977) (C1, 15 Aug. 1979) [hereinafter AR 381–45], which has no two-year removal provision. This argument fails on two grounds. First, the offered document was not properly maintained in the IRR as the regulation states that "Court Martial (sic) and Article 15 orders will not be filed at IRR." AR 381–45, para. 2–6. Second, the purpose of the IRR is to maintain counterintelligence investigative records, not a history of a soldier's service, and so it is not a personnel record. *Id.* at para. 1–5. We thus reject the government's argument as it would allow in the back door what can't come in through the front door. *United States v. Brown,* 11 M.J. 263 (C.M.A.1981) (error to admit bar to reenlistment, a personnel record, which contained notation of three Article 15's that should have been removed from MPRJ); *United States v. Delaney,* 27 M.J. 501, 504 (A.C.M.R.1988).

### III. Sentence Reassessment

The appellant was convicted of three marijuana distributions, totalling no more than 2 grams, and two uses of marijuana. Aggravation evidence included three previous records of nonjudicial punishment: one for use of marijuana (which we have found was erroneously admitted) and two for various offenses not related to drugs. The latter two were compounded by the fact that each contained a suspended punishment which was then vacated for misconduct. The maximum period of confinement that the members could have adjudged was forty-nine years; they adjudged sixty months.

### A.

▮ When this court reassesses a sentence because of prejudicial error, its task is to assure that the sentence is no greater than that which would had been adjudged in the absence of the error. *United States v. Peoples,* 29 M.J. 426, 427 (C.M.A.1990); *United States v. Sales,* 22 M.J. 305, 308 (C.M.A.1986). We find that the erroneous admission of the record of nonjudicial punishment for use of marijuana in 1988 prejudiced the appellant as to the confinement portion of his sentence, and that a reduction of twelve months is appropriate to cure this error.

The two properly admitted nonjudicial punishments revealed a generally undisciplined soldier whose continued service was far from desirable. But without the erroneous admission of the nonjudicial punishment for use of marijuana, the appellant could not have been seen as a persistent drug offender who deserved long incarceration as well as a discharge.

### B.

▮ This court is charged with affirming only the sentence or such part thereof as we find should be approved. Article 66(c), UCMJ, 10 U.S.C. § 866(c). This is true even after reassessing a sentence to remove prejudice. *Peoples,* 29 M.J. at 427. The appellant contends that the confinement adjudged is inappropriately severe, especially as the original six specifications, all relating to minor marijuana crimes just like the five of which he stands convicted, were referred to a special court-martial where the maximum confinement was six months. We agree that, even after reassessing for prejudice, the confinement is too severe by twelve months.

The charged drug offenses were minor and did no demonstrable harm to the appellant's unit or the Army. The properly admitted records of nonjudicial punishment were also for minor offenses, although the appellant's inability to last out a suspension makes rehabilitation questionable. Still, none of this could be said to label him a menace to society so as to justify prolonged incarceration. Finally, the convening authority was aware of the appellant's history when he initially acceded to a BCD special court-martial, with its maximum of six months' confinement,

which supports a finding that forty-eight months is excessive confinement.

The remaining assertions of error are without merit.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for thirty-six months, forfeiture of all pay and allowances, and reduction to Private E1.

Senior Judge WERNER and Judge RUSSELL concur.