UNITED STATES, Appellee

v.

Jon E. EDMOND, Fire Control
Technician Third Class
U.S. Coast Guard.

No. 93–1292.
CMR No. 999.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 6, 1994.

Decided Feb. 28, 1995.

For Appellant: *Lieutenant Commander Allen Lotz* (argued).

For Appellee: *Lieutenant John F. Koeppen* (argued).

*Opinion of the Court*

CRAWFORD, Judge:

1. Contrary to his pleas, appellant was convicted of being an accessory after the fact to attempted sodomy, 3 bad-check offenses, and committing an indecent act, in violation of Articles 78 and 134, Uniform Code of Military Justice, 10 USC §§ 878 and 934, respectively. The convening authority approved the sentence of a bad-conduct discharge, confinement for 1 year, total forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review [1] affirmed the findings and the sentence. 37 MJ 787 (1993).

GRANTED ISSUE [2]

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO DISMISS ALL CHARGES WITH PREJUDICE DUE TO LACK OF A SPEEDY TRIAL.

2. We hold the military judge did not abuse his discretion in failing to dismiss all

1. *See* 41 MJ 213, 229 n. * (1994).

2. We also granted review of 2 other issues, 39 MJ 428 (1994), which have been disposed of by

*United States v. Carpenter,* 37 MJ 291 (CMA 1993), *cert. granted sub nom. Ryder v. United States,* —— U.S. ——, 115 S.Ct. 713, 130 L.Ed.2d 621 (1995) (No. 94–431).

charges with prejudice due to lack of speedy trial under RCM 707, Manual for Courts–Martial, United States, 1984 (Change 5).

## FACTS

3. On the evening of March 1, 1990, eight members of the United States Coast Guard Cutter HAMILTON, including appellant, rented a room at the Red Roof Inn in Philadelphia, Pennsylvania, for a going-away party for a fellow Coast Guardsman who was being transferred. The HAMILTON was undergoing repair work in Philadelphia. The group consisted of seven men and one woman, the woman being Seaman L. She became intoxicated after consuming almost a fifth of liquor. Several members of the group, including appellant, took advantage of her condition to engage in acts of sexual misconduct. The witnesses to these events both at the party and afterwards were in Philadelphia on temporary duty from various parts of the country, including Hawaii, Washington State, Oklahoma, New Jersey, Massachusetts, Virginia, as well as members of the HAMILTON, which was en route to its new homeport in Long Beach, California, from June 21 to July 25, 1991.

4. On June 25, 1991, charges were preferred against appellant for the following offenses:

(1) conspiring with Yeoman Martin R. Trujillo, Seaman Jose M. Collazo, and Seaman Charles A. Hokoana to rape, sodomize, and indecently assault Yeoman L.;

(2) conspiracy to obstruct justice by hindering the investigation of the rape, sodomy, and indecent assault of L;

(3) making a false official statement to Special Agent R. A. Carreiro that no one made any sexual advances against L at the Red Roof Inn in Philadelphia, Pennsylvania, on or about March 1, 1990;

(4) rape of L;

(5) forcible sodomy of L;

(6) indecent assault of L· by inserting his finger into her vagina; and

(7) indecent assault of L by biting her about the neck, breast, and thighs.

5. Prior to arraignment (1), (4), and (5) were dismissed. Two accessory-after-the-fact specifications were added on November 18, 1991.

6. After an Article 39(a), UCMJ, 10 USC § 839(a), session, the military judge on December 21 dismissed without prejudice the aforementioned charges and specifications preferred on June 25, 1991, against appellant because of a denial of a right to speedy trial as set forth in RCM 707. On December 27, 1991, additional charges were preferred against appellant for conspiracy to obstruct justice, making a false official statement, and indecent assault.

7. On February 7, 1992, another Additional Charge and 3 specifications of uttering bad checks were preferred; on March 13, 1992, a fifth Additional Charge and its specification were preferred alleging commission of an indecent act upon Seaman L. Appellant alleges that the indecent-act charge is in effect very similar to the indecent-assault charge which was dismissed without prejudice, Final Brief at 3, and we will treat it accordingly.

8. The prejudice alleged by the accused on appeal is that he was disenrolled from a service school, denied access to classified material, and was under great stress. Final Brief at 7.

## DISCUSSION

9. While articulating an "abuse of discretion" standard in *United States v. Taylor*, 487 U.S. 326, 335, 108 S.Ct. 2413, 2419, 101 L.Ed.2d 297 ¶ 12 (1988), the Supreme Court stated that "discretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Id.* at 336, 108 S.Ct. at 2419 ¶ 13. The Court continued: "Whether discretion has been abused depends, of course, on the bounds of that discretion and the principles that guide its exercise.... Factual findings of a district court are, of course, entitled to substantial deference and will be reversed only for clear error." *Id.* at 336 ¶ 14 and at 337, 108 S.Ct. at 2419–20 ¶ 16. But the appellate court is to apply the

"particular factors" set forth in the statute. *Id.* at 336–37, 108 S.Ct. at 2419–20 ¶ 15.

10. The Speedy Trial Act (18 USC §§ 3161–62) requires a reviewing court to undertake "substantive scrutiny to ensure that the judgment is supported in terms of the factors identified in the statute." In assessing these factors, "the district court's judgment of how opposing considerations balance should not lightly be disturbed." 487 U.S. at 337, 108 S.Ct. at 2419–20 ¶ 16.

■ 11. RCM 707 was based on ABA Standards, Speedy Trial (1978), *see* Drafters' Analysis, Manual, *supra* at A21–36, and is generally similar to 18 USC §§ 3161–62. The Rule was designed to ensure speedy-trial protections in addition to those granted by the Sixth Amendment, Due Process Clause of the Fifth Amendment, and Article 10, UCMJ, 10 USC § 810. *United States v. Vogan*, 35 MJ 32, 33 ¶ 5 (CMA 1992). In *United States v. Kossman*, 38 MJ 258, 262 ¶ 21 (CMA 1993), relying on Article 10, we set forth a "reasonable diligence" standard, citing *United States v. Tibbs*, 15 USCMA 350, 353, 35 CMR 322, 325 ¶ 8 (1965). But *Kossman* is not applicable here because there was no pretrial restraint of appellant.

12. This case marks the first time this Court has addressed the 1991 change to RCM 707 allowing dismissal without prejudice. That version of RCM 707(d) provides:

A failure to comply with the right to a speedy trial will result in dismissal of the affected charges. This dismissal will be with or without prejudice to the government's right to reinstitute court-martial proceedings against the accused for the same offense at a later date. The charges must be dismissed with prejudice where the accused has been deprived of his or her constitutional right to a speedy trial. In determining whether to dismiss charges with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case that lead to dismissal; the impact of a reprosecution on the administration of justice; and any prejudice to the accused resulting from the denial of a speedy trial.

13. This provision is similar to 18 USC § 3162(a)(2) of the Federal Speedy Trial Act, which reads:

In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice . . . .

14. One of the differences between the Speedy Trial Act and RCM 707 is that the factor of "prejudice to the accused resulting from the denial of a speedy trial" set out in the Rule is not enumerated in the Speedy Trial Act. However, in *United States v. Taylor*, 487 U.S. at 333–34, 108 S.Ct. at 2418 ¶ 10, the Court pointed out that the legislative history reveals that prejudice to the accused is a factor to be taken into account.

■ 15. In assessing whether there has been a violation of the Sixth Amendment right to a speedy trial, courts examine the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 ¶ 24 (1972). In contrast to the Speedy Trial Act, RCM 707(d) explicitly provides that if the judge does find a violation of the Sixth Amendment right to a speedy trial, the sole remedy is dismissal. *See United States v. Strunk*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). Neither the dismissal with prejudice nor without prejudice has a "priority" in the Speedy Trial Act. *United States v. Taylor*, 487 U.S. at 334, 108 S.Ct. at 2418 ¶ 11.

16. In determining whether the motion should have been granted with prejudice, the Supreme Court announced that it would examine the following factors: "truly neglectful" government "attitudes"; intentional versus "isolated unwitting violation[s]"; excuses for the delay; and responsibility for the delay. *Id.* at 338–39, 108 S.Ct. at 2420–21 ¶ 18. The Federal Courts have looked at similar factors, such as "intentional dilatory conduct," *United States v. Kottmyer*, 961 F.2d

569, 573 ¶ 18 (6th Cir.1992); a "pattern of neglect," *id.* at 573 ¶ 18 and *United States v. Giambrone,* 920 F.2d 176, 182 (2d Cir.1990); and simple inadvertence, *United States v. Wright,* 6 F.3d 811, 814 ¶ 12 (D.C.Cir.1993).

17. A review of the record reveals that the 176–day delay in this case was not due to "intentional dilatory conduct" on the part of the Government. After the party at the Red Roof Inn, the witnesses and suspects were spread throughout the world, including California, Hawaii, Oklahoma, and many places on the East Coast. In fact, prior to preferral of charges appellant's ship sailed from Boston to Long Beach, California, making potential witnesses and the co-accuseds unavailable. Twenty-eight days of the delay were due to finding a "suitable" investigating officer for a multi-party Article 32, UCMJ, 10 USC § 832, investigation. This involved contacting 7 different Coast Guard legal offices to find an Article 32 investigating officer. Another delay between August 26 and September 19, 1991, was to await the trials of the co-accused to obtain further evidence for appellant's trial. Certainly it is reasonable for the Government to decide in which order defendants will be tried. *Cf. United States v. Facey,* 26 MJ 421 (CMA 1988); *United States v. Grom,* 21 MJ 53, 57 ¶ 14 (CMA 1985), *cert. denied,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 718 (1986).

18. Appellant demanded a speedy trial on August 27, 1991, after a multi-party Article 32 investigation. The military judge evaluated the seriousness of the offenses; the facts and circumstances surrounding the request for dismissal; the reasons for the delays; and the prejudice to the accused. He found very little prejudice to appellant, *i.e.,* disenrollment from school, inability to work due to withdrawal of his security clearance, and possible stress. There was no indication of the slightest impact on the right to a fair trial.

19. Based on these facts, we hold that the military judge did not abuse his discretion in failing to dismiss the charges with prejudice.

The decision of the United States Coast Guard Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX and GIERKE concur.

WISS, Judge (concurring in the result):

20. The majority asserts: "A review of the record reveals that the 176–day delay in this case was not due to 'intentional dilatory conduct' on the part of the Government." 41 MJ at 422. It then notes that this record reveals that there was difficulty in contacting potential witnesses and co-accuseds who had "spread throughout the world" after the party; difficulty in finding a suitable Article 32, Uniform Code of Military Justice, 10 USC § 832, officer; and the need to obtain further evidence for appellant's trial by waiting for the trial of co-accused. My own review of the record, however, does not support the implication that such facially understandable explanations caused the delay here, so I cannot join in the majority opinion.

21. The party at which these offenses allegedly occurred was on *March 1, 1990,* in Philadelphia, where the revelers' ship was in overhaul. Investigation of this event began at least as early as April 1990. On June 21, 1991, nearly 16 months after the party, the ship left the east coast, and it arrived at its new homeport of Long Beach, California, on July 25, 1991. The original charges had been preferred against appellant, in the interim, on June 25, 1991, thereby starting the 120–day clock of RCM 707(a)(1), Manual for Courts–Martial, United States, 1984.

22. On *September 9, 1991,* the Government asked for and received the convening authority's retroactive excusal for delay since June 25. The military judge, however, ruled that excusing this delay was an abuse of the convening authority's discretion in violation of RCM 707(c), which only provides for "prospective grants of pretrial delay" in all cases tried after July 6, 1991. Exec. Order No. 12767, 56 Fed.Reg. 30299 (1991). *See United States v. Carlisle,* 25 MJ 426 (CMA 1988). As well, this request and grant of excusal was *ex parte*—another violation of RCM 707 found by the military judge. *See United States v. Duncan,* 38 MJ 476, 479 ¶ 15 (CMA 1993).

23. It was during this period of delay that the alleged difficulties arose to which the

majority points. Upon a closer look, however, those difficulties do not appear to have been so overwhelming. As mentioned earlier, the investigation into the events at the party had begun in April 1990; in fact, the Government had given immunity to one of the attendees and had interviewed him in November 1990. Further, the witnesses and co-accused numbered only a total of eight, and all were service members. In this context, it is not readily apparent that the task of locating and interviewing these eight people was so imposing, as the majority implies. As to the tactical decision to try appellant after 2 of his co-accused, I note simply that neither testified at appellant's court-martial when it finally took place in March 1992.*

24. Thus, the delay from *September 23 until November 18, 1991,* is wholly unexplained; the prosecutor simply asserted that he believed that the convening authority had relieved the Government of accountability for 91 days of delay on September 9 (77 days as of that date and 14 more prospectively)—the implication being that trial counsel believed (erroneously, it turned out) that he had time to burn.

25. Accordingly, far from being a picture of orderly process interrupted only by reasonable and understandable difficulties, as painted by the majority, this case is not a pretty picture of a lackadaisical approach to military justice. I do not dissent from the majority's disposition here only because appellant is unable to point convincingly to substantial prejudice suffered as a result. *See* RCM 707(d); *United States v. Grom,* 21 MJ 53, 57 ¶ ¶ 16–17 (CMA 1985), *cert. denied,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 718 (1986). The Government has dodged a bullet.

---

* The military judge dismissed the relevant charges without prejudice to the Government to renew them in December 1991. Ironically, then, appellant's motion to dismiss charges due to unreasonable pretrial delay only resulted in 3 more months of delay.