# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HOLDEN, HOFFMAN, and SULLIVAN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 JARROD R. MCCLAIN**
**United States Army, Appellant**

ARMY 20051215 and ARMY 20051331

7th Infantry Division and Fort Carson
Michael J. Hargis, Military Judge
Colonel Kent R. Meyer, Staff Judge Advocate

For Appellant:  Colonel John T. Phelps, II, JA; Lieutenant Colonel Steven Henricks, JA; Major Fansu Ku, JA; Captain Patrick B. Grant, JA (on brief).

For Appellee:  Colonel John W. Miller, II, JA; Major Elizebeth G. Marotta, JA; Captain Michael C. Friess, JA; Captain Jaired D. Stallard, JA (on brief).

3 January 2008

-------------------------------------------
OPINION OF THE COURT
-------------------------------------------

SULLIVAN, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of absence without leave (AWOL) (two specifications) and wrongful use of marijuana, in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 912a [hereinafter UCMJ].  Contrary to his pleas, the military judge convicted appellant of two additional AWOL specifications, but acquitted appellant of missing movement under Article 87, UCMJ.  The convening authority approved the adjudged findings and sentence to a bad-conduct discharge, confinement for fifty-three days, and reduction to Private E1.

In a separate court-martial the following month, a panel consisting of officer members sitting as a special court-martial convicted appellant, contrary to his pleas, of failure to repair (FTR), wrongful use of marijuana, wrongful use of cocaine, and breaking restriction, in violation of Articles 86, 112a, and 134, UCMJ.  Appellant was acquitted of making a false official statement under Article 107, UCMJ.  He was sentenced to a bad-conduct discharge and six months confinement.  Both cases are before us for review under Article 66, UCMJ.  Given the complexity of the intertwined issues discussed below, we will decide both cases in this single opinion.

**BACKGROUND**

Appellant's first court-martial involved charges listed on three separate charge sheets. As to the first set of charges (original charges), appellant contended he was denied his right to a speedy trial under Rule for Court-Martial [R.C.M.] 707, *Manual for Courts-Martial*, United States (2005 ed.) [hereinafter *MCM*].[1] Prior to the motion hearing, both parties agreed 154 days had elapsed from preferral to arraignment. The parties then litigated the number of additional days to be excluded for appellant's AWOL periods.

After extensive litigation, including testimony of witnesses to one of the contested AWOL specifications, the military judge denied the defense motion. He concluded the 120-day speedy trial rule had not been violated because only 119 elapsed days were attributable to the government. With the consent of both parties, the military judge considered the evidence presented during the motion for the contested AWOL specifications and accepted additional prosecution and defense exhibits.

After considering the additional evidence, the military judge realized he erred in calculating the inception and termination dates for appellant's various AWOL periods. The military judge revisited his calculations sua sponte and concluded 124 days had elapsed between preferral and arraignment on the original charges. The government argued for subtraction of additional days from that total for each of appellant's FTRs. The military judge denied that request, concluding there was no basis upon which to calculate "duration" of a failure to repair. Accordingly, the military judge reversed himself, granted the defense motion, and dismissed the affected original charges without prejudice. The government did not appeal the military judge's dismissal ruling under Article 62, UCMJ, and R.C.M. 908.[2]

---

[1] "The accused shall be brought to trial within 120 days after the earlier of: (1) Preferral of charges . . . ." R.C.M. 707(a).

[2] "In a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged, the United States may appeal . . . an order or ruling of the military judge which terminates the proceedings with respect to a charge or specification." Article 62(a)(1), UCMJ. Had the government successfully appealed the military judge's ruling, double jeopardy would not preclude further proceedings. *See* R.C.M. 908.

Trial on the merits continued for the remaining charges unaffected by the dismissal; the military judge entered findings and a sentence for those offenses and adjourned the proceedings. One week later, at the request of the government, the military judge conducted a post-trial session under Article 39(a), UCMJ. Over defense objection, the military judge changed his speedy trial remedy of dismissal for the affected charges and granted a government request for mistrial instead.

On 21 October 2005, several charges arising from the same misconduct contained in the previously dismissed charges were referred to a special court-martial, as well as additional new charges (second court-martial).[3] At the second court-martial, defense counsel moved to dismiss the offenses dismissed at the first court-martial based on double jeopardy. The military judge ruled that jeopardy had attached to the original charges at appellant's first trial. The military judge further ruled he did not abuse his discretion in reconsidering the original dismissal and declaring a mistrial on the original charges, and denied the defense motion.[4] Ultimately, the panel convicted appellant of FTR and breaking restriction, which were part of the original charges, as well as wrongful use of cocaine and marijuana.

## DISCUSSION

Appellant asserts the military judge abused his discretion by granting a post-trial mistrial as a remedy for a speedy trial violation of R.C.M. 707. In our analysis, three separate issues require discussion: (1) the military judge's dismissal without

---

[3] Ironically, although the military judge eventually declared a mistrial for the affected charges, the government still elected to prefer the charges anew. The charges referred to a second court-martial which the military judge dismissed at the first court-martial were: The Specification of Charge I (failure to repair), The Specification of Charge II (false official statement), Specification 1 of Charge III (wrongful use of marijuana), and Specifications 1 and 2 of Charge V (breaking restriction). Specification 1 of Charge V was originally charged as a violation of a lawful order (Article 92, UCMJ) at the first court-martial; the gravamen of that offense was breaking restriction (Article 134, UCMJ), as referred at the second court-martial.

[4] R.C.M. 915(c)(2):

A declaration of a mistrial shall not prevent trial by another court-martial on the affected charges and specifications except when the mistrial was declared after jeopardy attached and before findings, and the declaration was:

(A) An abuse of discretion and without the consent of the defense; or

(B) The direct result of intentional prosecutorial misconduct designed to necessitate a mistrial.

prejudice for violation of R.C.M. 707; (2) the military judge's post-trial substitution of a mistrial for the earlier dismissal without prejudice; and (3) the implications of the double jeopardy clause on those rulings.

### Military Judge's Remedy for R.C.M. 707 Violation

In the military justice system, a service member's right to a speedy trial arises from several sources: the Sixth Amendment, Article 10, UCMJ, and R.C.M. 707.[5] *See United States v. Kossman*, 38 M.J. 258, 259 (C.M.A. 1993); *United States v. Tippit*, 65 M.J. 69, 80 (C.A.A.F. 2007). As previously stated, R.C.M. 707 requires a person be brought to trial within 120 days of preferral of charges. *See also United States v. Birge*, 52 M.J. 209, 210 (C.A.A.F. 1999). The purpose of this time limit is to protect speedy trial rights under the Sixth Amendment and Article 10, UCMJ, and society's interest in the prompt administration of justice. R.C.M. 707 analysis at A21-41 (citing *United States v. Walls*, 9 M.J. 88 (C.M.A. 1980)).

The remedy for an R.C.M. 707 violation is modeled on the Federal Speedy Trial Act, 18 U.S.C. § 3162 [hereinafter FSTA].[6] Under R.C.M. 707(d), dismissal of an affected charge may be with or without prejudice to re-preferral of charges for the same offense.[7] However, if the speedy trial violation is of constitutional dimension, the only remedy is dismissal with prejudice under R.C.M 707 and the FSTA. *United States v. Strunk*, 412 U.S. 434 (1973); *United States v. Edmund*, 41 M.J. 419, 421 (1995), *vacated on other grounds*, 516 U.S. 802 (1995).

Rule for Courts-Martial 707 provides four factors for evaluating whether an affected charge should be dismissed with or without prejudice: "the seriousness of the offense; the facts and circumstances of the case that lead to dismissal; the impact of a reprosecution on the administration of justice; and any prejudice to the accused resulting from the denial of a speedy trial." R.C.M. 707(d); *see also Edmund*, 41 M.J. at 421 (noting the similarities between R.C.M. 707(d) and the FSTA); *United States v. Taylor*, 487 U.S. 326, 333 (1988) ("[C]ourts are not free simply to exercise their equitable powers [in formulating] an appropriate remedy, but, in order to

---

[5] At trial, appellant conceded there was no violation of his statutory or constitutional speedy trial right. Article 10, UCMJ; U.S. Const. amend. VI.

[6] R.C.M. 707(d) analysis at A21-42.

[7] R.C.M. 707(d) was amended in 1991 specifically to permit dismissal without prejudice in the absence of a constitutional violation. Exec. Order No. 12767, 56 Fed. Reg. 30284 (1991).

proceed under the [FSTA], must consider at least the three specified factors.").[8]  As the Supreme Court previously noted in relation to the FSTA, "[d]ismissal without prejudice is not a toothless sanction; it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitation grounds." *Taylor*, 487 U.S. at 342.

The decision to dismiss with or without prejudice is left to the sound discretion of the military judge. *United States v. Dooley*, 61 M.J. 258, 262 (C.A.A.F. 2005).  Neither form of dismissal is mandated by R.C.M. 707(d). *Edmund*, 41 M.J. at 421; *see also Taylor*, 487 U.S. at 334 ("[C]ongress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation.").  A military judge's "judgment of how opposing considerations balance should not lightly be disturbed." *Edmund*, 41 M.J. at 421 (quoting *Thomas*, 487 U.S. at 337).  "[T]he standard requires that the military judge be clearly wrong in his determination of the facts or that his decision be influenced by an erroneous view of the law." *Dooley*, 61 M.J. at 262.  "Deference to the military judge's decision is particularly prudent in those cases when a violation of R.C.M. 707(d) has occurred." *Id*.

In this case, the military judge properly considered the four factors identified in R.C.M. 707(d).  Foremost, as the military judge noted and appellant acknowledged, there was no violation of constitutional dimension.  Appellant did not suffer any specific prejudice by the delay.  Provided an opportunity to articulate any such prejudice, appellant did not claim the delay affected his trial preparation or cause any specific harm. *See United States v. Proctor*, 58 M.J. 792, 797-98 (A.F.C.M.R. 2003) (appellant's failure to allege any specific prejudice, other than lengthy pretrial confinement, is a factor weighing against dismissal with prejudice for a R.C.M 707 violation).  Similarly, we find no "indication [in the record] of the slightest impact on [appellant's] right to a fair trial." *Edmund*, 41 M.J. at 422.

Although appellant did not allege any specific prejudice, he asserted the affected charges were relatively minor and that periods of inactivity by the government regarding the offenses amounted to neglect.  Accordingly, appellant maintained he was entitled to the inference of "intentional dilatory conduct," thereby demonstrating prejudice from the R.C.M. 707 violation.  The facts of this case, however, militate against this conclusion.  Appellant himself showed little interest in a speedy trial.  The deductions from the 154 days between preferral and arraignment included three separate periods of AWOL and two defense delays of the Article 32, UCMJ, investigation.  As the military judge properly concluded, the periods of delay attributable to the government were related to its efforts to present all known charges to the Article 32, UCMJ, investigating officer. *See* R.C.M. 906(b)(10)

---

[8] The FSTA provides for factors similar to R.C.M. 707(d): "the seriousness of the offense; the facts and circumstances of the case which lead to the dismissal; and the impact of a reprosecution on the administration of this chapter and the administration of justice."   18 U.S.C. § 3162(a)(2).

("[O]rdinarily, all known charges should be tried at a single court-martial."). It was appellant's own continuing misconduct that necessitated the three separate charge sheets at his first court-martial. We agree, therefore, with the military judge's findings of a lack of intentional dilatory conduct on the part of the government. *See Edmund*, 41 M.J. at 421 (the R.C.M. 707 violation was not due to "intentional dilatory conduct" on the part of the government).

Finally, the record supports the military judge's finding of minimal impact from reprosecution of the affected charges. Charges were re-preferred shortly after the conclusion of the first court-martial. Moreover, the length of the R.C.M. 707 violation was *de minimis*, only four days beyond the 120-day period. *Cf. Thomas*, 487 U.S. at 340 (under the FSTA, the length of delay is linked to the seriousness of the speedy trial violation; the longer the delay, the greater prejudice to the defendant).

Based upon these facts, we find that the military judge did not abuse his discretion in dismissing the charges without prejudice.

### *Military Judge's Post-Trial Declaration of Mistrial*

We next address the military judge's changed ruling on the speedy trial remedy from dismissal without prejudice to mistrial.[9] The standard of review for a military judge's determination of a mistrial is "abuse of discretion." *United States v. Harris*, 51 M.J. 191, 196 (C.A.A.F. 1999).

Our jurisprudence has long recognized that mistrial and dismissal are not the same. *See e.g.*, *United States v. Platt*, 21 U.S.C.M.A. 16, 44 C.M.R. 70 (1971); *cf. United States v. Weatherspoon*, 39 M.J. 762, 766 (A.C.M.R. 1994) (error by military judge to find that dismissal and withdrawal have the same impact). "A declaration of a mistrial shall have the effect of withdrawing the affected charges and specifications from the court-martial." R.C.M. 915(c)(1). The charges, however, remain preferred. *Weatherspoon*, 39 M.J. at 766. Therefore, after a mistrial the convening authority has the option of referring the charges again or otherwise disposing of them. R.C.M. 915(c) discussion.

The option of referring the charges anew does not exist where charges are dismissed. "[W]ithdrawal of charges . . . extinguishes the jurisdiction of a court-

---

[9] Given our disposition below, we need not address the authority of the military judge to conduct a "post-trial hearing" on his dismissal of charges, other than to note the tension between R.C.M. 905(f) (prior to authentication, the military judge may reconsider any ruling he has made other than one amounting to a finding of not guilty) and R.C.M. 1102 (post-trial proceedings in revision may correct apparent errors which can be rectified "without material prejudice to the accused"). *See* R.C.M. 907(a) discussion (unless the decision to dismiss is reconsidered and reversed, dismissal terminates the proceedings).

martial over them, and dismissal of charges . . . extinguishes the charges themselves." R.C.M. 604(a) analysis at A21-32. "Dismissal of charges disposes of those charges; it does not necessarily bar subsequent disposition of the underlying offenses . . . ." *Id.* Indeed, R.C.M. 707 internally recognizes the distinction. It outlines those events which affect time periods for speedy trial purposes, to include "[d]ismissal or mistrial," and provides "[i]f charges are dismissed, or if a mistrial is granted, a new 120-day time period under this rule shall begin on the date of the dismissal or mistrial . . . ." R.C.M. 707(b)(3)(A).

The distinction between mistrial and dismissal is more than mere semantics. After mistrial, affected charges remain "alive" for purposes of further proceedings; after dismissal, affected charges no longer exist. After dismissal, any further proceedings can only be initiated as to the conduct underlying the affected charges by starting anew, with preferral of different charges. While, in general, there are different standards for further trial proceedings,[10] dismissal is the only remedy for violation of the 120-day rule: "A failure to comply with this rule *will* result in dismissal of the affected charges . . . ." R.C.M. 707(d) (emphasis added). Mistrial is not an authorized remedy under R.C.M. 707 for a violation of the 120-day rule. In this case, therefore, dismissal, either with or without prejudice, was required and the military judge's declaration of a mistrial constituted a clear abuse of discretion.[11]

---

[10] *Compare* R.C.M. 604(b) (withdrawn charges may be referred to another court-martial unless withdrawal was improper; if withdrawn after introduction of evidence on guilt, charges may be referred to another court-martial "only if the withdrawal was necessitated by urgent and unforeseen military necessity"), *with* R.C.M. 907 discussion (in general, dismissal "does not ordinarily bar a later court-martial for the same offense if the grounds for dismissal no longer exist"). "When an accused in a criminal trial successfully moves for a mistrial, he may 'invoke the bar of double jeopardy' against a second trial only where 'the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for mistrial.'" *United States v. DiAngelo,* 31 M.J. 135, 136 (C.M.A. 1990) (emphasis omitted) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 679 (1982)); *see also* R.C.M. 915(c)(2).

[11] Federal courts have held dismissal is mandatory. As in military practice, a federal trial judge has discretion to dismiss with or without prejudice. *United States v. Kramer*, 827 F.2d 1174, 1176 (8th Cir. 1987) ("Although dismissal is mandatory when the [FSTA] is violated, the [FSTA] grants the trial judge the discretion to dismiss the indictment with or without prejudice."); *United States v. Bilsky*, 664 F.2d 613, 617 (6th Cir. 1981) ("A finding of a constitutional speedy trial violation mandates dismissal with prejudice. Under the [FSTA], however, dismissal may be with or without prejudice." (citations and footnotes omitted)); *United States v. Lainez-Leiva*, 129 F.3d 89 (2d Cir. 1997).

7

***Double Jeopardy***

We now consider the impact of the military judge's rulings which allowed the government to try appellant over his objection on several original charges in a second court-martial. The Fifth Amendment to the United States Constitution provides that no person shall "be subject, for the same offence, to be twice put in jeopardy of life or limb . . . ." The "double jeopardy clause" protects against successive prosecutions and multiple punishments for the same offense. *United States v. Ragard*, 56 M.J. 852, 855 (Army Ct. Crim. App. 2003) (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). The purposes underlying double jeopardy include "protecting the integrity of a final judgment," *United States v. Scott*, 437 U.S. 82, 92 (1978), and assuring the government, "with all its resources and power," is not "allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187-88 (1957).

The double jeopardy clause is applied to military personnel through Article 44(a), UCMJ, which provides: "No person may, without his consent, be tried a second time for the same offense." Article 44(b), UCMJ, also provides: "A charge or specification shall be dismissed upon motion made by the accused before the final adjournment of the court-martial in that case if . . . [t]he accused has previously been tried by court-martial . . . for the same offense . . . ." *See United States v. Collins*, 41 M.J. 428, 429 (C.A.A.F. 1995). Article 44, UCMJ, does not, however, offer broader protections than granted by the Constitution in this case.[12] *See United States v. Cook*, 12 M.J. 448, 452 (C.M.A. 1982) (the constitutional protection is "mirrored" in Article 44(a), UCMJ); *United States v. Richardson*, 21 U.S.C.M.A. 54, 44 C.M.R. 108 (1971); *Burtt v. Schick*, 23 M.J. 140 (C.M.A. 1986).

"The Supreme Court and military courts have consistently held that jeopardy does not attach until an accused is 'put to trial before the trier of the facts, whether the trier be a jury or a judge.'" *Ragard, 56* M.J. at 855 (quoting *Serfass v. United States*, 420 U.S. 377, 390-91 (1975)). "In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. In a nonjury trial, jeopardy attaches when the court begins to hear evidence." *Serfass*, 420 U.S. at 388 (citations and footnote omitted).

In appellant's first court-martial, he was arraigned, entered pleas, and evidence on the merits was admitted. "[W]here a case is tried to a court without a jury, jeopardy begins after accused has been indicted and arraigned, has pleaded and the court has begun to hear evidence." *McCarthy v. Zerbst*, 85 F.2d 640, 642 (10th

---

[12] Significantly, Article 44, UCMJ, incorporates elements of Supreme Court double jeopardy jurisprudence. In its exception to the definition of the term "trial," Article 44(b), UCMJ, looks to a *finding* of guilt.

Cir. 1936), *cert. denied*, 299 U.S. 610 (1936); *see also United States v. Wells*, 9 U.S.C.M.A. 509, 26 C.M.R. 289 (1958). Therefore, as the military judge properly found during the motion hearing in appellant's second trial, jeopardy had attached.

Having determined that jeopardy attached, we next address the implication for further proceedings. Contrary to appellant's claim, our determination that jeopardy attaches "begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Serfass*, 420 U.S. at 390 (quoting *Illinois v. Somerville*, 410 U.S. 458, 467 (1973)). In general, "[w]here 'the trial is terminated without any submission to either judge or jury as to . . . guilt or innocence' there has been no determination of guilt of [sic] innocence and retrial is not barred." *United States v. Germono*, 16 M.J. 987, 988 (A.C.M.R. 1983) (quoting *Scott*, 437 U.S. at 101).

In determining whether a ruling amounts to a finding of not guilty, "a defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'" *United States v. Hunt*, 24 M.J. 725, 728 (A.C.M.R. 1987) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572 (1977)). Applying this principle to appellant's case, it is helpful to review the factual scenarios in two seminal Supreme Court cases: *Scott,* 437 U.S. 82 and *United States v. Lee*, 432 U.S. 23 (1977).

In *Scott*, the defendant moved, both before and during trial, for dismissal of two indictment counts because of preindictment delay. 437 U.S. at 84. After hearing the evidence, the trial court granted the dismissal and held the affected charges were barred from reprosecution. The government sought to appeal. The Court concluded:

> [T]he defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause . . . . [T]he Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice . . . . [I]n the present case, respondent successfully avoided [actual] submission of the first count of the indictment [to the trier of fact] by persuading the trial court to dismiss it on a basis which did not depend on guilt or innocence. He was thus neither acquitted nor convicted, because he himself successfully undertook to persuade the trial court not to submit the issue of guilt or innocence to the jury which had been empaneled to try him.

*Id*. at 98-99.

9

*Lee* was a bench trial with significant parallels to appellant's case. 432 U.S. 23. In *Lee*, the defense moved to dismiss a purportedly defective specification after the prosecution made its opening statement. The judge denied the motion, continued with the trial, but indicated that he would research the defense position at the first opportunity and give the motion further consideration "as appears to be warranted." *Id*. at 26. After presentation of evidence, the judge stated the evidence proved the defendant's guilt beyond "any reasonable doubt in the world," but nevertheless granted the earlier motion to dismiss based on defects in the charging documents. *Id*.

The defendant was later charged with the previously dismissed offense. At the subsequent trial, the evidence presented was substantially the same as the evidence at the first trial and the defendant was convicted. On appeal, the defendant claimed his second trial was barred by double jeopardy. The Supreme Court disagreed, again noting that "a trial court's ruling in favor of the defendant is an acquittal only if it 'actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" *Id.* at 30 n.8 (quoting *Martin Linen Supply Co.*, 430 U.S. at 571).

Equally significant to appellant's case, the Supreme Court found a trial court label of "dismissal" or "mistrial" not controlling:

> The critical question is whether the order contemplates an end to all prosecution of the defendant for the offense charged. A mistrial ruling invariably rests on grounds consistent with reprosecution, while a dismissal may or may not do so. . . . In short, the order entered by the [trial court] was functionally indistinguishable from a declaration of mistrial.

*Id.* at 30-31 (citation and footnote omitted).

In a sense, therefore, our analysis has come full circle. The military judge erred in ordering a mistrial when he was required to direct dismissal, but for purposes of the second trial on the original charges, the distinction between mistrial and dismissal "has no significance in the circumstances here presented." *Id.* at 31. Ultimately, it is the *substance* of a trial court ruling and not its *form* that determines its significance in the context of double jeopardy. *United States v. Jorn*, 400 U.S. 470, 478 n.7 (1971) (recognizing that "the trial judge's characterization of his own action cannot control the classification of the action").

In this case, the military judge granted the defense motion to dismiss on grounds unrelated to guilt or innocence. Applying *Scott* and *Lee*, we conclude appellant's second court-martial on the original offenses was not barred by Fifth Amendment double jeopardy protection. Since there was no constitutional double jeopardy bar, there was also no statutory bar. We find this consistent with numerous military cases holding dismissal of charges does not amount to a finding of not

guilty under Article 44, UCMJ. *United States v. Ware*, 1 M.J. 282 (C.M.A. 1976) (reconsideration of a dismissal of charges for denial of a speedy trial); *Mangsen v. Synder*, 1 M.J. 287 (C.M.A. 1976) (dismissal for lack of jurisdiction does not bar reprosecution); *Priest v. Koch*, 19 U.S.C.M.A. 293, 41 C.M.R. 293 (1970) (dismissal for failure to state an offense did not bar reprosecution).[13]

## CONCLUSION

Upon consideration of the entire record in both of appellant's cases, including those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the findings of guilty and sentences in both cases are affirmed.

Senior Judge HOLDEN and Judge HOFFMAN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[13] Not only is our conclusion consistent with Supreme Court precedent, any other interpretation would create a clearly unintended gap in the Rules for Courts-Martial. The Supreme Court directs us to analyze whether proceedings "actually represent a resolution, correct or not, of some or all of the factual elements of the offense charged." *Martin Linen Supply Co.*, 430 U.S. at 571. If we were to ignore this directive and adopt appellant's position, an accused could simply wait until after jeopardy attaches to file a motion to dismiss for speedy trial and essentially foreclose the option of dismissal without prejudice, provided in R.C.M. 707(d)(1). We do not read the Rules for Courts-Martial to deprive the public "of its valued right to 'one complete opportunity to convict those who have violated its laws.'" *Scott*, 437 U.S. at 100 (quoting *Arizona v. Washington*, 434 U.S. 497, 509 (1978)).